AMERICAN MOTORISTS INSURANCE CO. and St. Paul Fire & Marine Insurance Co., Plaintiffs-Appellants, Cross-Appellees,

v.

AMERICAN EMPLOYERS' INSURANCE COMPANY, Defendant-Appellee, Cross-Appellant.

No. 78–3043

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Dec. 20, 1979.

See also 5 Cir., 600 F.2d 15.

---

* Fed.R.App.P. 34(a); 5th Cir.R. 18.

Phelps, Dunbar, Marks, Claverie & Sims, James H. Roussel, George A. Gaitas, New Orleans, La., for St. Paul Fire & Marine Ins.

Charles F. Lozes, Alan L. Offner, New Orleans, La., for American Motorists.

Frank M. Brame, Lake Charles, La., for defendant-appellee, cross-appellant.

Before GOLDBERG, RONEY and TJOFLAT, Circuit Judges.

PER CURIAM.

This action derives from the stupid prank of Donald W. Kelly. While waiting for his employer's boat to be refueled, Kelly leaned out of the fuel company's office window and indiscriminately fired three shots into the harbor. One of these shots ricocheted and struck Jack Trahan who was on shore at the time. Trahan sued Kelly's employer, Lafayette Crewboats, Inc. (Lafayette), and Lafayette's insurers, American Employers' Insurance Company (American Employers'), American Motorists Insurance Company (American Motorists), and St. Paul Fire and Marine Insurance Company (St. Paul), in state court. Lafayette was provided comprehensive general liability insurance by American Employers', primary protection and indemnity insurance by American Motorists, and excess protection and indemnity insurance by St. Paul.

Trahan's state court action was settled before it came to trial. American Employers', American Motorists, and St. Paul jointly funded in varying portions a settlement of $525,000 in Trahan's favor, while reserving the right of each to litigate the issue of coverage of their various policies.

Subsequently, American Motorists and St. Paul filed a diversity action in district court against American Employers', claiming that they were entitled to reimbursement for that portion of the settlement fund which they had contributed. In its initial decision, the district court ruled in the plaintiffs' favor. It held that American Motorists' and St. Paul's coverage did not extend to Kelly's shots since those policies protected only against liability arising out of the ownership of Lafayette's vessel. Further, relying upon *National Surety Corp. v. Western Fire & Indemnity Co.*, 318 F.2d 379 (5th Cir. 1963), the district court refused to allow American Employers' to escape liability by proof that Kelly acted outside the scope of his employment and that, as a result, its policy did not apply to the shooting incident. The court observed that the introduction of such evidence would constitute litigation after settlement of Lafayette's liability to Trahan. The court concluded that *National Surety* prohibits such litigation after settlement.

Upon rehearing, however, the district court reversed its decision as to American Employers' defense. It reaffirmed its conclusion that the settlement conclusively established Lafayette's liability to Trahan. However, it noted that a court may look to the underlying facts of an accident in determining whether an insurance policy covers that particular event. As a result, the district court concluded that American Employers' defense could be raised although the issue whether Kelly acted within the scope of his employment related both to the liability of his employer, Lafayette, and to the applicability of American Employers' policy to the incident. The court found that Kelly did not act within the scope of his employment and that, accordingly, American Employers' policy did not cover the accident. Since none of the insurance policies applied to the shooting, the court held that "all insurance companies must bear the losses resulting from their respective contributions to the settlement."

We note that the district court's handling of this matter was quite capable and correct. We write this opinion only to dispel any confusion that might exist as to the significance of this court's decision in *National Surety Corp. v. Western Fire & Indemnity Co.*, 318 F.2d 379 (5th Cir. 1963).

*National Surety* presented a situation quite similar to this case. The two insur-

ance companies, National Surety Corp. (National) and Western Fire & Indemnity Co. (Western), had jointly funded a settlement to an injured plaintiff on behalf of their defendant insured, while reserving the right to litigate their liability under their respective policies. National attempted to avoid liability by asserting that its insured was not liable to the injured plaintiff because of the latter's contributory negligence. Holding that this defense was not available to National, the court stated that, in view of the insurers' settlement, the liability of their insured

> should be taken as established for the purpose of thereafter determining as between themselves the extent of the obligation of each under its respective policy to discharge such liability and the right of each to recover from the other any amount of such $30,000 paid by it, which the other under its policy should have paid.

318 F.2d at 386.

This statement that an insurer cannot litigate after settlement the liability of its insured must be placed in the context of that case. In *National Surety*, as in this case, the relevant issue was whether, and to what extent, each insurance policy covered the activity which gave rise to the insured's potential liability. National's defense related solely to its insured's liability to the settling plaintiff, an issue which it was foreclosed from litigating by the settlement. The issue of contributory negligence was therefore irrelevant.

In contrast, American Employers' defense here—that Kelly did not act within the scope of his employment—was relevant to this action, for it pertains to the issue whether American Employers' policy covered Lafayette's employee's actions. The fact that the defense coincidently concerned Lafayette's liability to Trahan is irrelevant; all issues concerning the insurers' policy coverage are to be litigated in this sort of case.

 We also affirm the district court's judgment that the insurers' various contributions to the settlement fund should remain undisturbed even though none of the policies applied to the accident. In deciding to settle this case, the insurers performed various calculations concerning Lafayette's potential liability and the possible applicability of their respective policies. To the extent that they miscalculated, they must bear the burden of their gamble; their initial distribution must stand.[1]

AFFIRMED.

---

1. There might be situations in which it would be proper for a court to give effect to insurers' proration clauses even though none of the insurers' policies applies to the incident which gave rise to their joint funding of a settlement. We need not reach this issue, however, for this proration claim was not raised before us or the district court.