Felix Manuel REYES–LOPEZ, et al.,
Plaintiffs, Appellees,

v.

MISENER MARINE CONSTRUCTION
CO., et al., Defendants, Appellants.

New Hampshire Insurance Company,
Defendant, Appellee.

No. 87–1816.

United States Court of Appeals,
First Circuit.

Heard March 7, 1988.

Decided Aug. 17, 1988.

Francisco Ponsa–Flores with whom Francisco Ponsa–Feliu, Edda Ponsa–Flores and Lawrence E. Duffy were on brief, for defendants, appellants.

James L. Carroll with whom Charles A. Cordero and Cordero, Miranda & Pinto were on brief, for defendant, appellee New Hampshire Ins. Co.

Before CAMPBELL, Chief Judge, WISDOM,* Senior Circuit Judge, and BOWNES, Circuit Judge.

* Of the Fifth Circuit, sitting by designation.

**530**

WISDOM, Senior Circuit Judge:

In this case, two insurers, New Hampshire Insurance Co. ["NHI"] and United States Aviation Underwriters ["USAU"], sue each other for contribution in the settlement of a personal injury action against their insured, Misener Marine Construction Co. ["Misener"]. The district court ruled that NHI's policy did not cover the loss, that one of USAU's two policies did cover the loss, and that accordingly, USAU must bear the full cost of the settlement, 664 F.Supp. 652 (1987). We affirm.

## I.

Misener paid Omniflight Offshore, Inc. ["Omniflight"] to provide daily helicopter transportation for Misener's employees between Misener's premises in Pinones, Puerto Rico, and an offshore construction site. On June 27, 1984, Felix Manuel Reyes Lopez ["Reyes"] went to Misener's Pinones premises to meet his brother, a Misener employee who was to arrive from the construction site on an Omniflight helicopter. Reyes entered Misener's premises through an open gate in the surrounding fence. Inside the fence, access to the helipad was unrestricted. After the helicopter landed, Reyes walked onto the helipad and was struck by the tail rotor of the helicopter. As a result, it was necessary to amputate his left arm.

Misener was a named insured on three insurance policies in force at the time of the accident. NHI had issued a comprehensive general liability policy for Misener's Pinones premises. Misener was the sole named insured on this policy. USAU had issued two policies to Omniflight, an aircraft operations liability policy and a airport liability policy. As required by its contract with Misener, Omniflight had listed Misener as an additional named insured on both these policies.

Reyes, Misener, Omniflight, NHI, and USAU negotiated a settlement providing that the two insurers pay Reyes $310,000.[1] The settlement agreement provides that no party admits having been negligent, that neither NHI nor USAU accept ultimate liability, and that each insurer reserve the right to sue the other for contribution.

USAU concedes that its airport policy covers both Misener and Omniflight for the risk of this loss. USAU further concedes liability for Reyes' injury under the airport policy.[2] While USAU also concedes coverage of both Misener and Omniflight under the aircraft policy, it denies liability under that policy, contending that there was no negligence in the operation of the helicopter.

NHI, on the other hand, denies coverage under its policy with Misener. NHI's policy provides:

*Exclusions.* This insurance does not apply:

(a) ...

(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:

(1) any automobile or aircraft owned or operated by or rented or loaned to any insured, or

(2) any other automobile or aircraft operated by any person in the course of his employment by the insured ...[3]

NHI contends that "exclusion (b)" excludes coverage of Reyes' injury.

Regarding the dispute over liability, NHI and USAU both agree that Reyes' negligence (walking onto the helipad while the helicopter was running) contributed to the

---

1. The record does not reveal how much of this amount was paid by NHI and how much by USAU.

2. As the district court correctly observed, coverage and liability are distinct issues. "Coverage" refers to whether losses arising from a particular risk (an activity or event) are within the scope of the insurance. When an insured is sued, for example, coverage governs the insurer's duty to provide a defense. *See* 14 Couch on Insurance § 51:42 (2d ed. 1982). "Liability", on the other hand, refers to the insurer's responsibility to pay for a loss. Under "liability insurance" policies such as the three policies in this case, the insurer is liable only if its insured would be liable. *See* 12 Couch on Insurance § 45:28.

3. Joint App. at 142.

accident. Both NHI and USAU also argue that the failure to restrict access to the helipad constituted negligence. NHI, however, insists that helipad security was Omniflight's responsibility; USAU insists that it was the responsibility of both Omniflight and Misener. NHI further contends that Omniflight's pilot was negligent in operating the helicopter when it was apparent that the security was inadequate. In particular, NHI contends that landing and idling a helicopter in the vicinity of unsupervised persons like Reyes is negligent.

The district court held that the contract between Misener and Omniflight was a lease and, accordingly, that exclusion (b) excluded Reyes' injury from coverage under NHI's policy. The district court also found that there had been no negligence in the piloting of the helicopter and that there was therefore no liability under USAU's aircraft policy. Because USAU admits both coverage and liability under its airport policy, the district court then concluded that only USAU is liable only under the airport policy. Accordingly, the district court held that NHI had a right of contribution from USAU for funds NHI paid in settlement to Reyes. USAU appeals.

## II.

■ The principal issue in this appeal is whether NHI's policy covers Reyes' injury. NHI contends that under exclusion (b) it does not. Because the helicopter was neither owned nor operated by Misener or its employees, the terms of exclusion (b) apply to Reyes' injury only if the helicopter was "rented or loaned" to Misener.[4]

The contract between Misener and Omniflight stated that Omniflight would furnish Misener "for its exclusive use one (1) Bell Model 206L–1 helicopter ... together with the necessary crews, personnel, parts, accessories and equipment, to perform the jobs and render the services that from time to time be requested by Misener". In exchange, Misener was responsible for furnishing the landing and aircraft parking sites and paid Omniflight both a monthly service charge and a fee per flight hour. The contract further specified that Omniflight acted "in the capacity of an independent contractor".

USAU contends that because Omniflight acted as "an independent contractor", the helicopter was not "rented or loaned" to Misener within the meaning of exclusion (b).

## A.

As a practical matter, we have little doubt that NHI intended exclusion (b) to remove from coverage all risks associated with the operation of aircraft—except perhaps the risk that an aircraft might enter the insured's premises uninvited.

NHI's policy plainly excludes coverage of the risks from aircraft that Misener or its employees own, rent, borrow, or operate. In the light of this exclusion, the reading of NHI's policy offered by USAU makes no sense. There is no reasonable basis to conclude that, while the policy excludes these other risks, NHI nonetheless intended, or Misener understood, the policy to cover risks from aircraft operated by independent contractors like Omniflight—a class of persons about whom NHI surely knows considerably less than it knows about its insured or its insured's employees.

Moreover, the gap left in Misener's insurance coverage by exclusion (b) is filled by the coverage afforded Misener under USAU's airport and aircraft policies. Omniflight, as part of its contract with Misener, included Misener as an additional named insured on those policies.[5] This suggests that Misener and Omniflight understood NHI's policy not to cover risks arising out

---

4. Misener does not dispute that neither Omniflight nor its pilot were "employees" of Misener.

5. The contract also stated:
   Omniflight agrees to save and hold harmless Misener Marine, its agents, employees and representatives, from and against any and all claims, demands, causes of action, and losses of every kind, on account of personal injuries, death or damage to or loss of property, resulting directly from Omniflight's acts of negligence.
   *Id.* at 257.

of the operation of helicopter or helipad and further understood USAU's policies to do so.

Usually, of course, we should construe insurance policy exclusions in the light most favorable to the beneficiary.[6] Here, however, the circumstances are unusual. Here the insured has two policies using similar language to define a risk, one including it and the other excluding it. In these circumstances, it serves both the purpose of providing protection to the insured[7] and the purpose of giving the words of the contract their usual and ordinary meaning[8] to construe the exclusion broadly.[9]

### B.

We should also construe the terms in this contract in accordance with Puerto Rico law. USAU contends that the helicopter was not "rented or loaned" to Misener because, under Puerto Rico civil law, the contract between Misener and Omniflight was not a "lease" of a helicopter. We reject this argument because it is premised upon an overly-narrow view of the civil law concept of a "lease".

In *Matter of Daben Corp.*, the court determined that a "license agreement" between a department store and the owner of one of its departments was not a lease under Puerto Rico law.[10] As the *Daben* court explained the lease of a "thing":

Three essential elements ... characterize the lease

> contract in Puerto Rico and in Spanish civil law: (1) the thing; (2) temporal duration; and (3) a price.[11]

Unlike *Daben*, there is in this case no dispute that the contract between Misener and Omniflight involves a duration and price sufficiently fixed to be called "rent".[12] Whether the contract constitutes a lease under Puerto Rico law, therefore, boils down to whether it concerns a proper subject for a lease.

But to be a "lease" under Puerto Rico civil law, the contract between Misener and Omniflight need not be the lease of a "thing" such as a helicopter. The Puerto Rico Civil Code states that "[a] lease may be of things, *works, or services*".[13] In particular,

> A person who binds himself to grant the use of a thing, *to execute a work, or to render a service*, is a lessor; and a person who acquires the use of the thing *or the right to the work or service* for which he binds himself to pay, is a lessee.[14]

These subject matter terms are read liberally. The court in *Daben*, for example, concluded that in a lease of "things",

> All things (movable or immovable, present or future, corporeal or incorporeal) whose use and enjoyment is in commerce may be leased, even if the things

**6.** *Rosario v. Atl. Southern Inc. Co.*, 95 P.R.R. 742, 748 (1968); *The London Assurance & Overseas Agencies, Inc. v. Superior Court*, 95 P.R.R. 295, 301 (1967); *Barreras v. Santana*, 87 P.R.R. 215, 218 (1963); *Aparicio v. Teachers' Association of Puerto Rico*, 73 P.R.R. 549, 554 (1952).

**7.** *Barreras*, 87 P.R.R. at 221–22.

**8.** *Id.*

**9.** *Farmers Fire Ins. Co. v. Kingsbury*, 118 Misc.2d 735, 461 N.Y.S.2d 226, 227 (Sup.Ct.1983), *aff'd* 105 App.Div.2d 519, 481 N.Y.S.2d 469 (App.Div. 1984); *Williamson v. Continental Casualty Co.*, 201 N.J.Super. 95, 492 A.2d 1028, 1032 (Super. Ct.App.Div.1985); *Insurance Co. of North America v. Waterhouse*, 424 A.2d 675, 680, 681–82 (Del.Super.Ct.1980). *See also Rubins Contractors, Inc. v. Lumbermen's Mutual Ins. Co.*, 821 F.2d 671, 677 (D.C.Cir.1987), citing the rule with approval.

**10.** 469 F.Supp. 135 (D.P.R.1979).

**11.** *Id.* at 148.

**12.** In *Daben*, the contract price was expressed as a percent of future sales, an unknown figure, and therefore not sufficiently fixed to be a "rent". *Id.* at 149. There is no merit in USAU's argument that because Misener paid Omniflight per flight hour, the contract price is "variable" and therefore not a "rent". All rents, expressed as a price per use or per time period, are "variable" in this sense.

**13.** P.R.Laws Ann. tit. 31 § 4011 (1976) (emphasis added).

**14.** *Id.* § 4031 (emphasis added).

themselves may not be sold or donated. Castan, 4 *Codigo Civil* 271 (1969); Manresa, 10 *Codigo Civil Espanol* 470 (1951). Only things that are consumed in their use (fungibles), [P.R.Laws Ann. tit. 31, § 4014 (1976)], cannot be leased. Unlike the common law, the civil law allows that a leased thing not be entirely defined. *See* Castan, supra, at 272.[15]

The Puerto Rico civil code sets out different requirements for a lease of things and a lease of works or services:

> In a lease of things, one of the parties thereto binds itself to give to the other the enjoyment or use of a thing for a specified time and a fixed price.[16]

USAU contends that, as an independent contractor, Omniflight retained complete control over the helicopter. Because Misener lacked direct control over the helicopter, USAU argues, the contract between Misener and Omniflight does not meet the requirements for a lease of things. This may be true.[17]

We agree nonetheless with the district court's conclusion that the contract between Misener and Omniflight constitutes a lease of "works or services". Indeed, under the Puerto Rico civil code, there is little else that the contract could be. The idea of an "independent contractor" is a common law concept, foreign to the civil law. The civil law concept closest to an independent contractor is a lease for works or services. The Puerto Rico civil code states:

> In a lease of works or services, one of the parties binds himself to execute a work or to render a service to the other for a specified price.[18]

Plainly, the contract between Misener and Omniflight fits this description.

Because the contract between Misener and Omniflight is a lease of works or services under Puerto Rico law, and because the helicopter was provided for Misener's exclusive use as part of that lease, we hold that the helicopter was "rented or loaned" to Misener within the meaning of exclusion (b) in NHI's policy.

### III.

■ USAU also contends that, although Reyes' injury may "arise from" the operation of an aircraft, it also arises from Misener's negligent security. Accordingly, USAU argues that NHI's policy should cover this loss notwithstanding exclusion (b). In support, USAU cites California and Minnesota cases holding that when a loss arises both from an excluded risk and from an "independent, concurrent cause" covered by an insurance policy, the policy should be construed to cover the loss.[19]

We find no indication that Puerto Rico has adopted the "independent, concurrent cause" rule for the construction of insurance contracts. In *Marrero v. Corporacion de Renovacion Urbana y Vivienda*, [20] for example, the court held that an insurance policy excluding from coverage losses arising from the operation of an automobile

---

15. 469 F.Supp. at 148.

16. P.R.Laws Ann. tit. 31 § 4012 (1976).

17. In *Galinanez Hnos. v. Tribunal Superior*, 77 P.R.R. 836 (1955), the Puerto Rico Supreme Court, analyzing tenant rights under Puerto Rico's Reasonable Rents Act, explained the civil law requirements for a lease of things with reference to the Spanish commentator Manresa:
    Manresa expresses two concepts which clarify sufficiently the juridical phenomemon found in the lease: (1) that the lease is one of the rights of disposal (*jus disponendi*) of ownership, and, therefore, one who leases disposes of part of his property right in favor of another person; and (2) that the lease is by nature a property right transmissible in part from one person to another.

*Id.* at 841. We recognize the authority of *Galinanez* and Manresa, but find it unnecessary to decide whether the contract in this case fits their description of the lease of a thing.

18. P.R.Laws Ann. tit. 31, § 4013 (1976).

19. *E.g.*, *State Farm Mutual Automobile Insurance Co. v. Partridge*, 10 Cal.3d 94, 109 Cal.Rptr. 811, 813–15, 514 P.2d 123, 125–27 (1973); *Waseca Mutual Insurance Co. v. Noska*, 331 N.W.2d 917, 921 (Minn.1982); *St. Paul School District No. 625 v. Columbia Transit Corp.*, 321 N.W.2d 41, 46–47 (Minn.1982).

20. 658 F.Supp. 443, 445–46 (D.P.R.1987), applying Puerto Rico law.

could *not* be construed to cover losses arising from the negligent entrustment of an automobile. We decline to apply the rule of *Partridge* and *Waska Mutual Insurance* without a clear indication that Puerto Rico courts have adopted it.[21]

## IV.

### A.

USAU admits liability for Reyes' injury under the airport policy, but denies liability under the aircraft policy.[22] NHI argues that because USAU settled Reyes' suit against Misener and Omniflight, USAU cannot in a suit for contribution assert its insured's lack of liability as a defense.[23] In support, NHI cites two Fifth Circuit cases, *National Surety Corp. v. Western Fire & Indemnity Co.*[24] and *American Motorists Ins. Co. v. American Employers' Ins. Co.*[25] As the court in *American Motorists* cautioned, however, "[t]his statement that an insurer cannot litigate after settlement the liability of its insured must be placed in the context of [the *National Surety*] case."[26] The rule of *National Surety* was premised upon a settlement among multiple insurers of a single insured engaged in a single activity.[27] Moreover, the specific issue foreclosed to the insurers in *National Surety* was whether the injured party's contributory negligence would have barred all recovery against the insured.[28] In those circumstances, it is plainly inconsistent with the settlement to contend in a suit for contribution that the insured would not have been liable.[29] In such a suit, "the relevant issue is whether, and to what extent, each insurance policy covers the activity that gave rise to the insured's potential

---

**21.** Even if Puerto Rico law recognized the "independent, concurrent cause" rule, it is unclear that it would apply here. The rule requires that, to be a basis for coverage, a cause must be concurrent with and *independent* of another cause that is a risk excluded by the policy. *Garvey v. State Farm Fire & Casualty Co.*, 227 Cal.Rptr. 209, 213 (Cal Ct.App.1986), *pet. for review granted*, 229 Cal.Rptr. 663, 723 P.2d 1248 (1986). Causes are independent only if each could have produced the loss alone. *But see Safeco Ins. Co. of America v. Guyton*, 692 F.2d 551, 555 (9th Cir.1982) ("the twin causes in *Partridge* were independent only in the sense that each cause had an independent origin, not that they did not interact with one another to cause the loss").

Plainly, Misener's allegedly negligent security is not a risk that caused Reyes' injury independently of the operation of the helicopter. The accident could not have occurred without the operation of the helicopter. On the other hand, because no security system is perfect, it is possible that this accident could have occurred even if helipad security has been extremely good. Thus, while operation of a helicopter and heliport are causes of this accident independent of lax security, lax security is not a cause independent of the operation of a helicopter and heliport.

**22.** USAU points out on appeal that its airport policy with Omniflight (with Misener as an additional named insured) contains an exclusion using precisely the same language as exclusion (b) in NHI's policy with Misener. USAU airport policy, Joint Appendix at 227. At this stage in the litigation, USAU is not allowed to renege on its admission of coverage and liability under the airport policy. And, of course, that USAU might admit coverage and thereby decline to enforce this exclusion in no way affects NHI's right to enforce the same terms in its insurance contract.

**23.** In Puerto Rico, the right to contribution arises whenever one or more of several joint debtors has paid more than its proportionate share of a debt. P.R.Laws Ann. tit. 31, § 3109 (1976). *See In re N–500L Cases*, 691 F.2d 15, 18 & n. 1 (1st Cir.1982); *Conjugal Partnership v. Conjugal Partnership*, 109 D.P.R. 279 (1979); *Security Ins. Co. v. Superior Court*, 101 D.P.R. 191 (1973). This right was first recognized among joint tortfeasors, *Garcia v. Government of the Capital*, 72 P.R.R. 133 (1951), and extends to insurers standing in the stead of a tortfeasor. *See In re N–500L Cases*, 691 F.2d at 18 & n. 2.

**24.** 318 F.2d 379, 385–86 (5th Cir.1963).

**25.** 608 F.2d 624, 626 (5th Cir.1979).

**26.** *Id.*

**27.** *National Surety*, 318 F.2d at 381–85.

**28.** *Id.* at 385.

**29.** *See American Motorists Ins. Co. v. American Employer's Ins. Co.*, 447 F.Supp. 1314, 1316–17 (W.D.La.1978), *remanded on other grounds*, 600 F.2d 15 (5th Cir.1979). *See also* 16 Couch on Insurance § 62.154 (2d ed. 1983). *But see Home Ins. Co. v. Certain Underwriters at Lloyd's*, 729 F.2d 1132, 1134 (7th Cir.1984), invoking *National Surety* to bar even non-settling insurers from disputing their insured's liability.

liability".[30]

This, however, is not such a suit. Here, three different activities, each covered by a different policy, provide possible bases for liability: general security at Misener's Pimones premises, security for the helipad, and the operation of the helicopter. Moreover, two different insureds may be responsible for the alleged negligence in these activities: it is uncontested that Misener was responsible for general security at its premises, but the parties dispute whether Omniflight or Misener was responsible for helipad security and helicopter operations. Although the settlement here plainly suggests that NHI and USAU expected that one of their insureds would have been found liable to Reyes at trial, it gives rise to no clear inference about which insured would have been found liable or what particular activity would have been the basis for that liability. Thus, the district court properly left these subjects open to dispute.[31]

### B.

■ Finally, we affirm the district court's finding that there was no negligence in the operation of the aircraft. After a review of the record, we cannot call this finding "clearly erroneous".[32] Fed.R. Civ.Proc. 52(a). The evidence, including the National Transportation Safety Board Accident Report, amply supports the conclusion that it was unforseeable that Reyes, not authorized to be on Misener's premises, would cross the helipad and walk into the helicopter rotor. Were access to the helipad known to be unrestricted or were it known that unauthorized visitors frequented the area, it may well have been negligent not to stop the helicopter rotors as soon as possible after landing or, indeed, to land the helicopter in such a place at all.

There is, however, no evidence of this in the record.

### V.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**30.** *American Motorists,* 608 F.2d at 626.

**31.** The Civil Code of Puerto Rico law also compels this conclusion:

A compromise shall only include the objects specifically determined therein or which from a necessary inference from its words must be considered as included therein.

P.R.Laws Ann. tit. 31, § 4826 (1976). *See also Capo Caballero v. Ramos,* 83 P.R.R. 625, 648–49 (1961).

**32.** As specified by the settlement, the district court made its findings of facts on the basis of deposition testimony, photographs, the pleadings, and various other documents the parties prepared as exhibits in the event of a trial. There was no formal trial.