[No. C002818. Third Dist. Jan. 31, 1990.]

UNITED PACIFIC INSURANCE COMPANY, Plaintiff and Appellant, v.
HANOVER INSURANCE COMPANY et al., Defendant and Appellant;
OHIO CASUALTY INSURANCE COMPANY, Defendant and Respondent.

928

COUNSEL

Greve, Clifford, Diepenbrock & Paras, Lawrence A. Wengel and Gerard A. Rose for Plaintiff and Appellant.

Weintraub, Genshlea, Hardy, Erich & Brown, Thomas C. Richards and Stephen F. Davids for Defendant and Appellant.

Donahue & Callaham and Jeffrey W. Lambert for Defendant and Respondent.

OPINION

**DAVIS, J.**—United Pacific Insurance Company (United Pacific), plaintiff below, appeals from the trial court's decision to leave undisturbed an arbitrator's proration of insurance coverage among the three parties to this dispute. Hanover Insurance Company (Hanover), a defendant below, cross-appeals from the judgment.[1] We shall conclude that the trial court's decision to leave the parties as it found them gives them all the equity they deserve. Accordingly, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts are undisputed. On December 1, 1982, Robert White was injured. He and his wife, Betty White, sued a number of defendants in Calaveras County Superior Court. These defendants tendered their defenses to the three insurers before us. Ultimately, the three insurers decided to settle with plaintiffs and reserve their right to dispute coverage among themselves.

Three provisions of the settlement agreement pertain to the dispute before us. First, the Whites agreed to dismiss their action with prejudice "in

---

[1] The third party, Ohio Casualty Insurance Company (Ohio Casualty), also a defendant below, accepts the court's ruling. Accordingly, Ohio Casualty is respondent and cross-respondent.

For convenience, we refer to the three parties collectively as "the three insurers."

consideration of the payment to [them] of 1.5 Million Dollars within the next sixty (60) days, ($750,000 of which is to be paid immediately by [Hanover] and [United Pacific], in the amount of $450,000 and $300,000, respectively) . . . ."

Second, the insurers agreed that an arbitrator would decide coverage issues and apportion the responsibility for the balance of the settlement fund. They agreed: "All defendants and [the three insurers] are reserving their rights as to all issues of insurance coverage under their respective insurance policies, said issues to be resolved by way of arbitration before a mutually agreeable arbitrator within the next sixty (60) days, however, [Ohio Casualty] and [Hanover] agree hereby to pay plaintiffs the entire 1.5 million dollars (less any contribution by [United Pacific]) in accordance with the arbitrator's decision."

Finally, the defendants and the insurers agreed they might reject the arbitrator's award and sue for declaratory relief. In such an action, they agreed that "the rights and liabilities of the respective defendants and insurance carriers can be litigated as to all aspects of insurance coverage in this case."

For reasons not in the record, the parties could not hold their arbitration within the 60 days they had contemplated in the settlement agreement. Apparently to keep the settlement from unraveling during the delay, Hanover and Ohio Casualty each agreed to pay the Whites half of the remaining $750,000 they were owed. As a result, prior to the arbitration, United Pacific had paid $300,000, Hanover had paid $825,000, and Ohio Casualty had paid $375,000.

The three insurers chose retired justice Leonard M. Friedman as their arbitrator. They submitted to him an "Agreed Upon Statement for Purposes of Arbitration." As part of that statement, they stipulated "that all policies apply to this loss in some manner. The sole question for purposes of arbitration is how the $1,500,000 paid in settlement should be borne among the carriers under applicable other insurance provisions."[2]

The arbitrator issued his decision on August 2, 1983. After considering the respective policies issued by the three insurers, he concluded that each insurer covered the Whites' damages. He apportioned the responsibility for the $1.5 million settlement: $300,000 from United Pacific as primary coverage; $1 million from Hanover as primary coverage; an additional $40,000

---

[2] The arbitrator concluded that this stipulation did not admit coverage. In his decision, he stated: "The quoted statement is not a concession of coverage but rather, that each carrier has colorable liability."

from Hanover as excess coverage; and $160,000 from Ohio Casualty as excess coverage.

Following the arbitrator's decision, each insurer sued separately for declaratory relief. United Pacific initially filed its action in Calaveras County. Ohio Casualty and Hanover filed their separate actions in Sacramento County. Eventually, the parties agreed to transfer United Pacific's case to Sacramento and treat it as the "lead" case.[3]

Although this appeal primarily concerns the court's judgment in United Pacific's action, our review of that judgment requires reference to one ruling made in Ohio Casualty's action. On September 12, 1984, Ohio Casualty moved in its action for "entry of judgment pursuant to written settlement agreement." Ohio Casualty attached a copy of the settlement agreement executed between the Whites and the three insurers. In its motion for judgment, Ohio Casualty asked the court to order Hanover to follow the arbitration award "as an *interim apportionment measure* pending the ultimate judicial resolution of this matter upon rejection of the arbitration award." (Italics in original.) Since the arbitrator concluded that Ohio Casualty should only have paid $160,000, but it had paid the Whites $375,000, Ohio Casualty sought reimbursement from Hanover of the $215,000 difference.[4]

After a hearing, the trial court issued an "order on motion to compel enforcement of settlement agreement." The court gave Ohio Casualty its requested relief. Hanover never attempted appellate review of this order.[5]

---

[3] After its transfer from Calaveras County, United Pacific's action received Sacramento County case number 319928. According to United Pacific's opening brief, Hanover's action bears Sacramento County case number 317852. Ohio Casualty's action bears Sacramento County case number 317338.

The trial court did not formally consolidate the three cases. Apparently because United Pacific filed its at issue memorandum earliest, its case became the "lead" case. Because each of the insurers was plaintiff in its own case, and the issues were identical, the court ordered simultaneous briefing after close of testimony in United Pacific's case. The court entered judgment in United Pacific's case only.

The record before us contains only documents filed in United Pacific's action. Several of these documents, however, include as exhibits documents filed in Ohio Casualty's superior court action. For reasons discussed more fully below, we have independently taken judicial notice of the papers filed in Ohio Casualty's action. (See *post*, fn. 5.)

[4] By the time of the arbitration, Hanover had only contributed $825,000 to the settlement. The arbitrator, however, had concluded that Hanover should contribute $215,000 more, for a total of $1,040,000. This $215,000 corresponded to the difference between the $375,000 that Ohio Casualty had paid and the $160,000 the arbitrator had concluded it should have contributed.

United Pacific had paid the Whites $300,000, the same amount the arbitrator eventually concluded it should have contributed.

[5] We take judicial notice of the court's file in Ohio Casualty's action. That file contains no notice of appeal from the order directing Hanover to pay Ohio Casualty the $215,000 plus

On October 28 and November 7, 1985, a different trial judge heard testimony on the underlying coverage dispute in United Pacific's action. The parties then submitted lists of "proposed issues of fact." For the next year, they argued coverage in light of the listed issues.

On December 4, 1986, the court issued its tentative decision. The court indicated an intent to find that *none* of the policies issued by the three insurers covered the Whites' loss. As such, the court described the three insurers as "volunteers" that had no duty to pay the Whites anything. Absent a duty to pay, the court planned to leave the insurers as it found them.[6]

United Pacific and Hanover requested a statement of decision. In response, the court made 40 detailed findings and conclusions. In particular, the court concluded that only one of the defendants the Whites sued in their original action was responsible for their injuries. In addition, the court concluded that none of the policies before it covered the lone tortfeasor.

The court ended its statement of decision by amplifying its tentative decision: "[t]he above factual findings indicate that there was no coverage under any policy issued by any party herein for the injuries of Robert White. The Court cannot find any precedent for invoking its equitable jurisdiction to fashion an apportionment of the sums paid in settling the White case. Nor can the Court find that any insurer is "closer" to being liable than others, or should pay more or less than the others. None are liable. [¶] By analogy, the Court looks to the law of contribution. Absent a fixed and positive obligation to pay under compulsion, there is no right to contribution. [Citations.] There can be no exercise of equity to place the parties in a better or worse position than they voluntarily assumed by making payments they did not have to make under any positive duty. Simply stated, there is no equity to be exercised. [¶] The court cannot declare the rights and liabilities of the parties and must leave them as it finds them."

On May 21, 1987, the court entered its judgment. That judgment simply states: "no party is entitled to contribution from any other party, nor is any party obligated to pay any sums to any other party." United Pacific timely

interest. We have independently searched our own records and find no attempt by Hanover to seek review here of that order by appeal or extraordinary writ.

[6] The tentative decision stated in part: "the Court concludes that in the absence of any duty to pay, there can be no exercise of equity to order an apportionment of the settlement. The parties, in view of the factual and legal determinations of the Court, must be treated as volunteers. The cases cited by the parties all involve some duty of coverage by someone. There is none here. The circumstances are covered by the law of contribution. All parties must remain in the position they are in."

appealed and Hanover timely cross-appealed.[7] The appeal and cross-appeal challenge only the trial court's failure to disturb the apportionment imposed by the arbitrator. In essence, United Pacific claims that the court abdicated its equitable authority by maintaining the status quo. Hanover claims that *as* "status quo," the court should not have chosen the postarbitration apportionment enforced by the judge who ruled in the Ohio casualty action. We consider each argument in turn.

I. *The Trial Court's Decision to Enforce the Arbitrator's Apportionment Equitably Resolved the Parties' Dispute.*

United Pacific raises two points in its appeal.[8] First, it attacks the portions of the tentative decision and statement of decision that purportedly label the insurers "volunteers." Second, it claims that the court failed to do equity. It asks us to remand for a reallocation of the settlement amount "based on equitable considerations." We decline the invitation.

■ Preliminarily, we remind the parties that this court reviews *judgments.* The judgment before us states simply and unequivocally: "no party is entitled to contribution from any other party, nor is any party obligated to pay any sums to any other party." We uphold judgments if they are correct for any reason, "regardless of the correctness of the grounds upon which the court reached its conclusion." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259, at p. 266.) "It is judicial action and not judicial reasoning which is the subject of review . . . ."[9] (*El Centro Grain Co.* v. *Bank of Italy, etc.* (1932) 123 Cal.App. 564, 567 [11 P.2d 650].)

---

[7] On July 10, 1987, Hanover moved to set the judgment aside and enter a different judgment. On July 20, 1987, United Pacific filed its appeal. The trial court denied Hanover's motion on September 30, 1987. Hanover then filed its cross-appeal on October 6, 1987. Both the appeal and cross-appeal are timely under rule 3, subdivisions (b) and (c), California Rules of Court.

[8] Like United Pacific, Hanover argues initially that the trial court erroneously labeled the insurers "volunteers." Indeed, Hanover adopts verbatim United Pacific's argument that "the trial court erred in refusing to equitably reapportion the settlement." To the extent these portions of Hanover's cross-appeal mirror United Pacific's appeal, we consider them here. For convenience, however, in this portion of the discussion, we speak only in terms of "appellant" United Pacific.

Below, in our discussion of the cross-appeal, we focus exclusively on Hanover's claim that the status quo should be the parties' prearbitration positions.

[9] Exceptions exist to the rule of nonreviewability of a trial court's reasons for its decision. The exception arguably most germane to this appeal allows for reversal where the trial court has refused to pass on an issue and disposes of the case on an entirely different ground. If the trial court thus chose an improper ground, an appellate court will not uphold the judgment on the ground *not* addressed by the trial court, *if* resolution of that issue depends upon conflicting evidence. (See 9 Witkin; Cal. Procedure, *supra*, Appeal, § 262, at pp. 269-270.)

For two reasons, this exception does not apply here. First, no one challenges the trial court's findings. Thus, there is no conflicting evidence precluding affirmance on any correct

Bearing in mind our ultimate focus on the trial court's judgment, we look first at the claim that the court erroneously labeled the three insurers "volunteers" under no duty to pay the Whites anything. ■ Equity traditionally denied contribution or subrogation to "volunteers" who pay more than their pro rata share of a loss. (See, e.g., *Smith* v. *Travelers Indemnity Co.* (1973) 32 Cal.App.3d 1010, 1018 [108 Cal.Rptr. 643].) "The apparent reason for this rule is to safeguard one coinsurer from being obligated by reason of the unilateral voluntary settlement of another insurer. [Citation.]" (*Ibid.*) Since attachment of the label "volunteer" thus precludes the equitable apportionment United Pacific seeks, it strongly rejects the court's purported use of that label. Under this case's circumstances, however, United Pacific's concern is misplaced.

We note initially that the judgment itself does not use any form of "volunteer" in its concise and unequivocal conclusion. United Pacific bases its concern on a line in both the tentative decision and the statement of decision.

As set forth above, in its tentative decision, the court announced an intent to find that each of the three insurers "must be treated as *volunteers.*" (Italics added.) ■ The tentative decision, however, does not constitute findings of fact and it may not be used to impugn subsequent findings or the judgment. (See, e.g., Cal. Rules of Court, rule 232; *Taormino* v. *Denny* (1970) 1 Cal.3d 679, 684 [83 Cal.Rptr. 359, 463 P.2d 711]; 9 Witkin, Cal. Procedure, *supra*, Appeal, § 263, p. 270.) A tentative decision may, however, help interpret an uncertain decision. (9 Witkin, Cal. Procedure, *supra*, Appeal, §§ 264-265.)

In its statement of decision, the court concluded "[t]here can be no exercise of equity to place the parties in a better or worse position than they *voluntarily* assumed by making payments they did not have to make under any positive duty." In light of the court's earlier reference in its tentative decision, United Pacific complains that this use of "voluntarily assumed" demonstrates the court's conclusion that the insurers were "volunteers."

■ In *State Farm & Casualty Co.* v. *Cooperative of American Physicians, Inc.* (1984) 163 Cal.App.3d 199, 203 [209 Cal.Rptr. 251], the court reiterated the definition of "volunteer": "A volunteer has been defined as

---

ground disclosed by the record. United Pacific and Hanover simply challenge the trial court's conclusion that their status as "volunteers" precluded equitable relief. As we shall show, the trial court's use of "volunteer," even if erroneous, does not require reversal. Second, as we shall also discuss, despite some unfortunate language in the statement of decision, the trial court did consider the parties' relative equities. Since the court found that no one *had* any greater equity, there was thus no equity the court could do.

' "a stranger or intermeddler who has no interest to protect and is under no legal or moral obligation to pay under the circumstances." ' [Citations.]" In *State Farm,* the court refused to label as a "volunteer" an insurer who settled with a plaintiff and then sought partial subrogation from a nonsettling coinsurer. The court held that "[a]bsent a final judgment of noncoverage as to any of the policies, all insurers were also under a duty to settle once liability of the insureds became reasonably clear. . . . Thus, [the dismissal of the claim for subrogation] is not defensible on the basis [that the settling insurer] was a volunteer." (*Id.* at p. 204.)

*State Farm* represents the prevailing contemporary view. An insurer's good faith settlement prior to a judicial determination of coverage does not automatically bar equitable apportionment of a loss. "[A] company which honors its obligation [by settling] is not a volunteer, and may be able to recover its fair share from the company whose hands failed to loosen its purse strings." (8A Appleman, Insurance Law and Practice (1981) § 4908, at pp. 381-382 [fn. deleted]; see also *St. Paul Fire & Marine Ins. Co.* v. *Allstate Ins. Co.* (1975) 25 Ariz.App. 309 [543 P.2d 147, 149]; *National Surety Corp.* v. *Western Fire & Indem. Co.* (5th Cir. 1963 ) 318 F.2d 379, 385-386; 16 Couch on Insurance (2d ed. 1983), § 62:154, at p. 625.)

Arguably, in its statement of decision, the trial court did *not* intend to describe the three insurers as "volunteers" in the pejorative sense of "officious intermeddler." As noted above, the court merely described payments made "voluntarily." In the abstract, we can perceive some semantic room to distinguish the value-laden connotations of "volunteer" from the more neutral denotations of "voluntarily." Moreover, we could find some import in the trial court's apparent rejection of the label "volunteer" found in the tentative decision.[10] Nevertheless, we need not address these distinctions further.

Even assuming that the trial court did erroneously consider the insurers "intermeddlers" for settling before a court had determined coverage, we would not disturb the court's decision to leave the insurers as it found them. While equity denies help to any intermeddler, the converse does not automatically follow. The mere determination that a party is *not* an intermeddler does not mean that equity will provide that party relief. Before equity will intervene, a party seeking relief must demonstrate that it has paid more of an obligation than its share while others have paid less than

---

[10]Thus, the absence of "volunteer" means that any interpretive resort to the nonbinding tentative decision cuts two ways. United Pacific argues that the tentative decision's use of "volunteer" amplifies the statement of decision's use of "voluntarily." An alternative interpretation, equally plausible at first glance, suggests that the trial court intentionally refused to attach the value-laden "volunteer" label in announcing its formal decision.

their share. (See, e.g., *Employers etc. Ins. Co.* v. *Pac. Indem. Co.* (1959) 167 Cal.App.2d 369, 376 [334 P.2d 658] [subrogation].) The trial court's unchallenged findings that no insurer covered the loss leaves no doubt that none of the three insurers can show that any of the others paid less than their share of an "obligation" no one of the three owed.

Traditionally, courts have used the equitable doctrines of subrogation, contribution, and indemnification to reapportion a payment exceeding one party's share of a common obligation. (See 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, §§ 122-124, at pp. 5341-5343.) None of these doctrines, however, apply here. As Witkin concisely notes in his introduction to these doctrines, they apply only "to one who has satisfied an obligation *of another* . . . ." (*Id.* at p. 5341 [italics added].)

■ For example, subrogation "applies in all cases in which one party, not a volunteer, pays a debt *for which another is primarily liable,* which in equity and good conscience should have been paid by the latter party." (Employers, *supra,* 167 Cal.App.2d at p. 376 [italics added].) Here, however, the trial court found that none of the insurers was liable to pay the Whites. If none is liable, it makes no sense to talk about "primary" or "secondary" liability under subrogation law.

■ Similarly, both contribution and indemnity, in their various guises, require the party seeking relief to demonstrate payment of more than that party's share of a common debt or other obligation. (See generally, 7 Witkin, *supra,* Equity, §§ 122-123, at pp. 5341-5342; see also, 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 83, 85-87, 89-92 [contribution and indemnity among joint tortfeasors and joint judgment debtors].) More specifically, to obtain contribution, one insurer must allege and prove that a second insurer covered the injury. (See, e.g., *Indem. Ins. Co.* v. *Amer. Auto. Ins. Co.* (1947) 81 Cal.App.2d 521, 524-525 [184 P.2d 316]; see also 8A Appleman, *supra,* § 4921, at pp. 517-518.) Again, here, none of the insurers covered the Whites' injuries. Accordingly, no joint obligation exists upon which to base a right to contribution.

None of the traditional equitable reapportionment doctrines thus applied here. As such, short of fashioning a new remedy, the court below had no basis for disturbing the insurers' settlement contributions.

United Pacific attempts to fit within precedent by basing its claim upon a phrase from *Amer. Auto. Ins. Co.* v. *Seaboard Surety Co.* (1957) 155 Cal.App.2d 192, 196 [318 P.2d 84]. In that case, as quoted by United Pacific, the court stated that the rights and duties of liability insurers, as between themselves, "flow from equitable principles designed to accomplish

ultimate justice in the bearing of a specific burden. . ." and not from specific policy clauses. (*Ibid.*) United Pacific, however, quotes *Seaboard Surety* out of context. The complete quotation states: "The reciprocal rights and duties of several insurers *who have covered the same event* do not arise out of contract, for their agreements are not with each other. [Citations.] Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders." (*Id.* at pp. 195-196 [italics added].) The emphasized portion of the complete quotation demonstrates unequivocally that United Pacific's maxim applies only if two or more insurers covered the same event.

United Pacific cites no cases where a court has apportioned a loss between multiple insurers, none of whom covered a loss. United Pacific comes closest with *Employers, supra,* 167 Cal.App.2d 369. In that case, two carriers disputed potential coverage. One of the two, Employers, settled and sued the nonsettling insurer, Pacific Indemnity, for subrogation. At trial, Pacific Indemnity established that Employers' policy had not covered the loss. The trial court, however, found that the Pacific Indemnity's policy *had* covered the loss paid by Employers. It thus found Employers entitled to subrogation from Pacific Indemnity. (*Id.* at pp. 372-374.)

On appeal, Pacific Indemnity argued that the settlement despite noncoverage *by* Employers made Employers a volunteer not entitled to subrogation. (167 Cal.App.2d at p. 376.) The court disagreed. As noted above, it found that good faith settlement did not necessarily make Employers a volunteer. Since Pacific Indemnity *had* covered the loss paid by Employers, the court concluded that Employers had paid "a debt for which another is primarily liable, which in equity and good conscience should have been paid by the latter party." (*Ibid.*)

We readily distinguish *Employers.* There, the nonsettling insurer had covered the loss. Under those circumstances, equity refused to let the nonsettling insurer "escape its clear liability . . . ." (167 Cal.App.2d at p. 380.) Here, however, none of the policies covered the loss. Thus, no party had "clear liability" and subrogation simply does not apply.

Equally unavailing is United Pacific's reliance on *Tatum* v. *Armor Elevator Co.* (1988) 203 Cal.App.3d 1315 [250 Cal.Rptr. 775]. In that case, one of two defendants settled with the plaintiff. The case proceeded to trial on both the plaintiff's action against the nonsettling defendant, and both defendants' cross-actions against each other for indemnity. (*Id.* at p. 1317.) The jury returned special verdicts indicating that neither defendant had acted

negligently. The jury also concluded that neither defendant owed the other anything on the indemnity cross-actions. (*Id.* at p. 1318.)

On appeal, the settling defendant argued that the court had instructed the jury wrongly on the nonsettling defendant's standard of care. (203 Cal.App.3d at p. 1318.) It claimed that "the jury would have found [the nonsettling defendant] liable under the instructions it proposed, which would enable it, in turn, to recover [from the nonsettling defendant] some or all of the $48,000 for which it settled with plaintiff." (*Ibid.*) The nonsettling defendant, however, argued that the settling defendant had no standing to appeal. (*Ibid.*) It argued that appellant was not "aggrieved" since the jury had absolved appellant of all wrongdoing. (*Ibid.*)

In the published portion of its opinion, the First District found that appellant had standing. It noted that the settling defendant did *not* have to show its liability to plaintiff before pursuing an indemnification claim against the nonsettling defendant. (203 Cal.App.3d at 1320.) Accordingly, it concluded: "A settling defendant's right to appeal cannot be predicated upon a finding of fault because . . . fault is not an essential element of the underlying claim." (*Id.* at p. 1321.)

While United Pacific seizes upon this last language, *Tatum* does not sweep as broadly as United Pacific insists. *Tatum* does *not* hold that indemnity applies to apportion the burden of voluntary settlement contributions between two equally blameless defendants. Rather, it merely holds that one blameless settling tortfeasor may attempt to show that another nonsettling tortfeasor was *not* blameless.

In this regard, *Tatum* adds nothing to the cases typified by *Employers.* Had *Tatum*'s appellant proved prejudicial instructional error on the standard of care, that appellant would have had another opportunity to find a culpable breach of that standard by the nonsettling defendant. Absent such culpability by the party from whom the settler seeks indemnity or contribution, no right to an equitable reapportionment exists.[11]

The one case we have found on point supports the trial court's determination. In *Am. Motorists Ins. Co.* v. *Am. Employers' Ins. Co.* (5th Cir. 1979) 608 F.2d 624 (hereafter *American Motorist*), a prankster employee fired three random shots out the employer's window. A victim hit by a shot sued

[11] In *Tatum*'s unpublished portion, the court rejected the appellant's instructional error claim. Accordingly, it affirmed the judgment that appellant take nothing from respondent on its cross complaint for indemnity. (203 Cal.App.3d at p. 1321.) The opinion does not mention any argument that the indemnity claim survived the jury's finding that neither party was liable to plaintiff.

the employee, the employer, and the employer's three insurers.[12] (*Id.* at p. 625.) The insurers settled with the victim for $525,000. (*Ibid.*) They reserved their right to litigate the coverage of their respective policies.

Two of the insurers sued the third in federal court under diversity jurisdiction. Ultimately, the trial court concluded that the employee had not acted within the scope of employment. (608 F.2d at p. 625.) "Since none of the insurance policies [thus] applied to the shooting, the court held that 'all insurance companies must bear the losses resulting from their respective contributions to the settlement.'" (*Ibid.*)

On appeal, the Fifth Circuit affirmed. It noted simply "that the district court's handling of this matter was quite capable and correct." (*Ibid.*) It concluded: "In deciding to settle this case, the insurers performed various calculations concerning [the employer's] potential liability and the possible applicability of their respective policies. To the extent that they miscalculated, they must bear the burden of their gamble; their initial distribution must stand." (608 F.2d at p. 626 [fn. omitted].)[13]

*American Motorists* provides a simple and fair answer to the dispute before us. ▉ There, as here, the trial court kept the parties as it found them at the time of judgment.[14] There, as here, none of the settling parties

[12] The victim sued in Louisiana state court. Louisiana allows a tort victim to sue the tortfeasor's insurer directly. (See, e.g., 18 Couch on Insurance (2d 1983) § 74:546, at p. 916, fn. 7 and accompanying text.)

[13] In a footnote to its conclusion, the court opined: "There might be situations in which it would be proper for a court to give effect to insurers' proration clauses even though none of the insurers' policies applies to the incident which gave rise to their joint funding of a settlement. We need not reach this issue, however, for this proration claim was not raised before us or the district court."

This speculation is pure dicta. Like the Fifth Circuit, however, we need not decide this issue since United Pacific does not suggest how a court might apportion the settlement according to the parties' respective proration clauses. Similarly, cross-appellant Hanover also does not suggest that the trial court use the parties' proration clauses to achieve the "more equitable" settlement.

Indeed, in its briefs on appeal, United Pacific does not indicate *any* alternative basis for an apportionment. Below, it argued initially that it should not have to pay anything. It then begrudgingly suggested two alternatives under which it would accept responsibility for a portion of the settlement. First, the court could apportion responsibility according to the total policy limits of the three insurers' policies, regardless of "primary" or "excess" designations. Second, it might apportion responsibility according to the differing number of defendants in whose favor the insurers had each settled.

For its part, in its cross-appeal, Hanover has suggested an alternative reapportionment. We consider that suggestion below.

[14] We postpone for the moment our discussion of the impact of the trial court prior order enforcing the arbitrator's decision. As noted above, the court issued that order in Ohio Casualty's separate action. Although styled by Ohio Casualty itself as an "interim" award pending the outcome of the final reapportionment, the order, in effect, became the final award. Hanover's cross-appeal, considered below, focuses on the propriety of enforcing that "interim" order as the final judgment.

had any greater equity than the other, since none covered the loss.[15] As such, the court's ruling comports well with the traditional equitable maxim, "Between those who are equally in the right, or equally in the wrong, the law does not interpose." (Civ. Code, § 3524.)

United Pacific insists that the court below did not act equitably because it declined to exercise its equitable jurisdiction. It points to the portions of the statement of decision that state: "there is no equity to be exercised. [¶] The Court cannot declare the rights and liabilities of the parties and must leave them as it finds them." We see nothing wrong in the statement of decision. Equity itself looks to substance over form. (Civ. Code, § 3528.) Whether phrased as an inability to do equity, or a desire to do equity by enforcing the status quo, the result in the case before is the same. The trial court's decision to enforce the status quo gave the parties all the equity to which they are entitled.

## II. The Trial Court Correctly Chose the Parties' Postarbitration Position as the Status Quo.

While we approve the trial court's decision to enforce the status quo, this case's peculiarities necessitate determining the status quo. In *American Motorists,* no dispute surrounded the status quo's determination, since nothing disturbed the settlement's initial funding pattern. (See 608 F.2d at pp. 625-626.) Here, however, the parties' settlement itself contemplated both a two-stage funding and a postarbitration reapportionment. In addition, the parties effectively modified the original agreement once the arbitration became delayed. Finally, in ruling in Ohio Casualty's action, the trial court enforced the arbitration agreement as an interim determination pending final judgment. That "interim determination" became the status quo enforced by the trial judge's judgment in the United Pacific action.

In its cross-appeal, Hanover asserts that the true status quo should be the parties' position just prior to the arbitrator's decision.[16] As outlined above,

---

[15] In its reply brief, United Pacific claims that "no trier of fact" has determined that none of the insurers had superior equities. No further factual determination, however, is necessary. Everyone agrees that none of the policies covers the loss. As such, none of the three insurers has any greater claim to contribution than the others.

[16] As noted *ante,* footnote 8, like United Pacific, Hanover argues initially that the trial court erroneously labeled the insurers "volunteers." Indeed, Hanover adopts verbatim United Pacific's argument that "the trial court erred in refusing to equitably reapportion the settlement." To the extent these portions of its cross-appeal mirror United Pacific's, we have already considered them above. Here, we focus exclusively on Hanover's claim that the status quo should be the parties' prearbitration positions.

such a result would effectively rescind the prior order that forced Hanover to pay Ohio Casualty over $215,000. Resolution of this matter turns on the effect of Hanover's failure to appeal from the order enforcing the arbitrator's decision.

■ Normally, an aggrieved party is entitled to one appeal from the final judgment in an action. (See, e.g., Code Civ. Proc., § 904.1; 9 Witkin, Cal. Procedure, *supra*, Appeal, § 43, pp. 66-67.) "A necessary exception to the one final judgment rule is recognized where there is a final determination of some *collateral matter* distinct and severable from the general subject of the litigation. If, e.g., this determination requires the aggrieved party immediately to *pay money or perform some other act*, he is entitled to appeal even though litigation of the main issues continues. Such a determination is substantially the same as a final judgment in an independent proceeding. [Citations.]" (9 Witkin, Cal. Procedure, *supra*, Appeal, § 45, p. 69 [italics in original]; see also *Trimble* v. *Steinfeldt* (1986) 178 Cal.App.3d 646, 649-650 [224 Cal.Rptr. 195]; *Henneberque* v. *City of Culver City* (1985) 172 Cal.App.3d 837, 841 [218 Cal.Rptr. 704].)

■ The prior order meets the test for appealable collateral matters. The order unequivocally commanded the payment of money. It also finally adjudicated a matter collateral to the main action. The main issue in dispute was coverage.[17] The court, however, decided a functionally separate matter. In effect, it ruled that the parties' settlement agreement bound them to follow the arbitrator's decision until a judge disturbed that decision when ruling on the coverage issue. Admittedly an "interim" decision, at the same time, it finally determined the shape of the parties' "interim" status. In particular, it determined which of two insurers had the right to use a substantial sum of money during a potentially protracted period.[18]

This order appears functionally equivalent to several interim decisions held appealable collateral matters. For example, in *In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368 [134 Cal.Rptr. 197, 556 P.2d 297], the Supreme Court held that an order regarding temporary support in a dissolution

In its reply brief here, Hanover "readily concedes Ohio Casualty's point that [the] three carriers stand on equal footing." It continues, "[s]ince there was no coverage for [the sole tortfeasor] under any of the policies, the parties do not appear [here] . . . in any superior or inferior position, vis-à-vis one another." Nevertheless, Hanover appeals to "equity and fairness" to return the parties to the pre-arbitration position.

[17] In Ohio Casualty's separate action, its amended complaint did not seek enforcement of the arbitration as the final apportionment between the parties. Rather, it sought a determination that it should not have to contribute anything at all to the settlement.

[18] In its moving papers before the trial court hearing its separate action, Ohio Casualty expressly argued that prejudgment interest would not have compensated it adequately for loss of use of its $215,000 pending resolution of the coverage issues.

action was an appealable collateral matter. Similarly, in *Stockton v. Rattner* (1972) 22 Cal.App.3d 965, 968 [99 Cal.Rptr. 787], the court held that an order authorizing the sale of property and impoundment of proceeds pendente lite was appealable as a collateral matter. Like these cases, the interim order established rights pendente lite that required the transfer of substantial amounts of money.

■■■■ Despite the appealability of this interim order, Hanover did not seek review here either by appeal or extraordinary writ. Rather, it paid Ohio Casualty in conformance with the order. The interim order thus created the status quo later faced by the trial court at the time of final judgment in the action before us.

Hanover claims that its payment under order was not a "voluntary" payment. As noted above, in the statement of decision, the court left the parties in the positions they had "voluntarily" assumed by making payments in advance of a judicial determination of coverage. At first glance, Hanover's argument has some appeal. Indeed, Hanover's opposition to paying Ohio Casualty in the year after the arbitrator's decision necessitated the order. Nevertheless, on closer inspection, the argument fails.

By failing to appeal from the interim order, Hanover *acquiesced* in that determination of the parties' obligations under the settlement agreement. The court ruled, in effect, that the parties had agreed to be bound by the arbitration decision until such time, *if at all,* as a court adjusted payment obligations according to the equitable principles governing coverage decisions.[19] Unfortunately for Hanover, the later trial judge determined that no party covered the loss and no basis existed for reapportioning the payments. Accordingly, the court left Hanover as it found it, i.e., in the position Hanover had implicitly accepted after time to appeal the interim order had lapsed. Hanover's acquiescence in the interim order is a voluntary action within the meaning of the later trial court's statement of decision.

Hanover complains that it is unfair to enforce, in effect, the arbitrator's decision, since that decision contradicts the court's finding of no coverage. As such, Hanover again argues that we should go back to the parties' prearbitration position. We find no unfairness in holding Hanover to its gamble. If Hanover was unhappy with the interim determination of the parties' agreement, and its effect on their status quo at the time the other

---

[19] We express no opinion on the correctness of the interpretation of the parties' settlement agreement set forth in the interim order. Since no dispute surrounds the facts relevant to the agreement's interpretation, we are not bound by his interpretation of the contract. (See, e.g., 9 Witkin, *supra*, Appeal, § 295, at p. 306.) Nevertheless, Hanover's acquiescence in the ruling made its correctness irrelevant to this proceeding.

action was tried, it had the opportunity to appeal that determination to this court. For whatever reason, it chose not to appeal. It implicitly chose to risk all on a judgment in its favor on the coverage issue, and chose to bear the risk of loss of use of the money until a judge ruled in its favor on coverage. Since neither this court nor the court below has ruled in Hanover's favor on coverage, the status quo to which it had acquiesced remains unchanged.

Accordingly, we affirm the trial court's judgment in all respects. Only Ohio Casualty Insurance Company is awarded costs on appeal. The remaining parties will assume such costs equally.

Evans, Acting P. J., and Carr, J., concurred.