[No. A036178. First Dist., Div. Two. Aug. 22, 1988.]

SHIRLEY TATUM, Plaintiff and Appellant, v.
ARMOR ELEVATOR COMPANY, INC., Defendant, Cross-defendant and Respondent;
GERSON BAKAR & ASSOCIATES et al., Defendants, Cross-complainants and Appellants;
STATE COMPENSATION INSURANCE FUND et al., Interveners and Appellants.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for partial publication. The portions to be published are as follows.

COUNSEL

Reginald L. Crowell for Plaintiff and Appellant.

Paul J. Herlihy and Ramos, Herlihy, Broderick, Hepler & Cockle for Defendants, Cross-complainants and Appellants.

Benjamin Cintz for Interveners and Appellants.

Martin T. Ruane, Leo J. O'Brien and Barfield, Dryden & Ruane for Defendant, Cross-defendant and Respondent.

OPINION

**KLINE, P. J.**—This personal injury action presents the question, among others, whether a defendant who voluntarily settled with an injured plaintiff, pursued a cross-complaint for indemnity against a nonsettling codefendant, and was at trial found not to have contributed to the plaintiff's injury, has standing to appeal that portion of the judgment denying indemnification.

### STATEMENT OF THE CASE

Appellant Shirley Tatum filed an action against Armor Elevator Company, Inc. (Armor), Center Street Associates, and Gerson Bakar and Associates (Bakar) alleging that the injuries she sustained in the process of extricating herself from a broken elevator were attributable to their negligence. The elevator was located in a building at 1947 Center Street in Berkeley which Center Street Associates owned and Bakar managed. Bakar contracted with Armor for elevator maintenance.

The other appellant, the California Department of Health, maintained the office at 1947 Center Street in which Tatum worked. The state filed a third-party action and complaint against all defendants, seeking indemnity for its liability to Tatum under the workers' compensation law.

Bakar settled with Tatum, and was dismissed from her action.[1] On February 27, 1985, Armor cross-complained against Bakar for comparative indemnity. On November 11, 1985, after settling with Tatum, Bakar cross-complained against Armor for express and comparative indemnity.

The jury returned special verdicts finding that neither Armor nor Bakar had been negligent, and adjudged that Tatum should take nothing from

---

[1] Both Bakar and Center Street Associates settled with Tatum, although the record only indicates a request for dismissal by Bakar. For ease of reference, both Bakar and Center Street Associates will be referred to collectively as Bakar.

either. The judgment also declared that Armor and Bakar would take nothing on their cross-complaints. Tatum moved for a new trial and judgment notwithstanding the verdict. The California Department of Health moved for a new trial. The court denied both motions. These appeals by appellants and cross-complainant Bakar followed.

STATEMENT OF FACTS*

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

DISCUSSION

I., II.*

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

III.

Cross-complainant Bakar maintains that the trial court should have given proffered jury instructions concerning both Armor's standard of care and the effect of the contract between Bakar and Armor. ▮▮▮ Armor protests that Bakar has no standing to appeal because the judgment was in all respects favorable to Bakar.

Armor correctly points out that only parties aggrieved by a judgment have standing to appeal from it. (Code Civ. Proc., § 902; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 139-142, pp. 148-152.) Given the finding of no negligence on the part of either Bakar or Armor, Armor's claim that Bakar lacks standing has surface appeal. However, the judgment included a declaration that Bakar take nothing on its cross-complaint against Armor, and it is with this part of the judgment that Bakar takes issue. Bakar argues that the jury would have found Armor liable under the instructions it proposed, which would enable it, in turn, to recover from Armor some or all of the $48,000 for which it settled with the plaintiff. Bakar insists, in other words, that it is "aggrieved" within the meaning of Code of Civil Procedure section 902.[4] We agree. As we explain, Bakar's standing to appeal is additionally justified by important considerations of policy.

---

*See footnote, *ante*, page 1315.

[4]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

If the nonsettling defendant—Armor, in this case—were found liable, its obligation to the plaintiff would be reduced by the amount of a good faith settlement.[5] (§ 877.) The Supreme Court has pointed out that there are "three interests at work in section 877:[6] "'First . . . is maximization of recovery to the injured party for the amount of his injury to the extent fault of others has contributed to it. . . . Second is encouragement of settlement of the injured party's claim. . . . Third is the equitable apportionment of liability among the tort-feasors.'"[7] (*Mesler* v. *Bragg Management Co.* (1985) 39 Cal.3d 290, 304 [216 Cal.Rptr. 443, 702 P.2d 601], quoting *Sears, Roebuck & Co.* v. *International Harvester Co.* (1978) 82 Cal.App.3d 492, 496 [147 Cal.Rptr. 262].) These principles allow "a settling concurrent tortfeasor [to] pursue his right of equitable partial indemnity against other concurrent tortfeasors." (*Sears, Roebuck & Co.* v. *International Harvester Co., supra,* 82 Cal.App.3d at p. 497; see also *Bolamperti* v. *Larco Manufacturing* (1985) 164 Cal.App.3d 249, 251-255 [210 Cal.Rptr. 155] [enactment of § 877.6 did not alter *Sears, Roebuck* rule; tortfeasor who settles in good faith can cross-complain against nonsettling defendants].)

Bakar has no legal obligation to the plaintiff, both because it settled with her and because the jury found it was not at fault. Indemnity, it is true, is often defined as depending on a legal obligation. "'It is a right which enures to a person who . . . has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another . . . .'" (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts,

---

[5] The Supreme Court has pointed out that section 877.6, which provides for a hearing on the issue of good faith of settlement, represents a legislative response to *American Motorcycle's* comment that, in addition to insulating the settling tort defendant from liability to the plaintiff, section 877 "should also apply to discharge a settling tortfeasor from claims for partial or comparative indemnity." (*Tech Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 495-496 [213 Cal.Rptr. 256, 698 P.2d 159], citing *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899].) Thus, section 877.6 was not intended to affect the liability of a nonsettling tortfeasor to a settling defendant. Furthermore, although for reasons that do not appear in the record there was no good faith hearing in the present case, the fact that Bakar settled for $48,000 and was subsequently found not negligent provides strong evidence that the settlement was in good faith.

[6] Section 877 states, inter alia: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect: [¶] (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater."

[7] More recently, the court noted that these three policies are not ranked in a hierarchy, but are to be harmonized with a view to "the specific context in which the potential conflict between the various policies appears." (*Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858, 872, fn. 15 [239 Cal.Rptr. 626, 741 P.2d 124].)

§ 50, p. 2348, citing *Alisal Sanitary Dist.* v. *Kennedy* (1960) 180 Cal.App.2d 69, 75 [4 Cal.Rptr. 379].) As noted in the Restatement Second of Torts: "If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability." (Rest.2d Torts, § 886B, subd. (1), p. 344.) According to these principles, the absence of any obligation by Bakar to plaintiff might be thought to deprive Bakar of the right to indemnity.

However, despite the frequent association of legal obligation with the right to indemnification, it is not essential. "The basis for indemnity is restitution, and the concept that one person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay. . . . As spelled out in the Restatement of Restitution: 'A person is enriched if he has received a benefit. . . . A person is unjustly enriched if retention of the benefit would be unjust. . . . A person confers a benefit upon another . . . not only when he adds to the property of another, but also when he saves the other from expense . . . .' " (Rest.2d Torts, § 886B, com. on subd. (1), pp. 345-346.) Were Armor liable, its financial obligation to Ms. Tatum would be reduced by the amount of Bakar's settlement, so Armor would be saved the full expense of its negligence. (§ 877.) Thus, the policy of equitable apportionment of liability would be defeated if Bakar could not seek restitution in the form of indemnity. Bakar's right to indemnity is unimpaired by the jury's finding that it was not at fault and therefore not legally obliged to pay anything to the plaintiff. If a settling defendant found to be 5 percent liable can seek indemnity from a nonsettling defendant found to be 95 percent at fault, there is no principled reason why the defendant who is wholly blameless cannot do so.

*Mullin Lumber Co.* v. *Chandler* (1986) 185 Cal.App.3d 1127 [230 Cal.Rptr. 122] (review den. Dec. 30, 1985), is relevant to our analysis. *Mullin* was a personal injury action by a carpenter who fell from collapsed scaffolding built from lumber purchased for the construction of the house. After settling with the plaintiff, the defendant lumber company pursued its cross-complaint for equitable indemnity against the housing contractor. The trial court entered judgment of nonsuit, holding that the lumber company could not recover on the claim for equitable indemnity unless it first proved its own negligence. The Court of Appeal reversed, concluding that the requirement imposed by the trial court "would undermine the important public policies of maximizing recovery to the injured party, encouraging settlements and apportioning liability according to fault while advancing no legitimate interests of the alleged tortfeasors who did not settle." (*Id.,* at p. 1129.) As the Court of Appeal emphasized, "If a defendant concludes, for any of a variety of legitimate reasons, it is in its best interests to settle with

the injured party, it should be encouraged to do so. If a settling defendant must nevertheless prove its own fault to a judge or jury in order to obtain indemnity from other tortfeasors it has precious little incentive to settle. From a defendant's point of view, settlement *avoids* a finding of fault. It also avoids the publicity, costs and inconvenience of a trial. Requiring the defendant to prove its own fault would deny it these benefits." (*Id.,* at p. 1132, fn. omitted, italics in original.)

The policy considerations set forth in *Mullin* apply not only in the trial context of that case but in the appellate context of this one, because constraining the right of a settling defendant to appeal the denial of his action for equitable indemnity would diminish his established right to commence that action in the first place. A settling defendant's right to appeal cannot be predicated upon a finding of fault because, as we have seen, fault is not an essential element of the underlying claim.

Because an action for equitable indemnity against a concurrent tortfeasor can be maintained by a settling defendant regardless of a legal obligation to the plaintiff, we hold that such a defendant can appeal the denial of his claim regardless whether he is found negligent at trial. Accordingly, we proceed to determine Bakar's assignments of error.

### IV.*

. . . . . . . . . . . . . . . . . . . . .

### V.

Though Bakar has standing to appeal from that portion of the judgment denying its cross-complaint, we conclude that the substance of the appeal is without merit. Accordingly, the judgment is affirmed.

Smith, J., and Benson, J., concurred.

---

*See footnote *ante*, page 1315.