NATIONAL UNION FIRE INSURANCE COMPANY, Plaintiff–Appellee,

v.

SHOWA SHIPPING CO., LTD., Defendant–Appellant.

No. 93–15627.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1994.

Decided Jan. 19, 1995.

Sam D. Delich, Flynn, Delich & Wise, San Francisco, CA, for defendant-appellant.

Henry D. Dicum and Cory A. Birnberg, Birnberg & Associates, San Francisco, CA, for plaintiff-appellee.

Before: PREGERSON, WIGGINS, Circuit Judges; and FONG,* District Judge.

FONG, District Judge:

## INTRODUCTION

Showa Shipping Co., Ltd. ("Showa") appeals the district court's judgment after a bench trial requiring Showa to indemnify National Union Fire Insurance Co. ("National Union") for funds National Union contributed to the settlement of a state wrongful

* The Honorable Harold M. Fong, U.S. District Court Judge for the District of Hawaii, sitting by designation.

death and injury action ("underlying action"). We REVERSE and REMAND.

## BACKGROUND

On November 8, 1994, a truck tractor towing a flatbed semitrailer (chassis) driven by Roy Dale Hightower ("Hightower"), ran a stop sign and collided with a passenger vehicle causing the death of one passenger, Mary Luisa Campos, and seriously injuring her husband, Vincent Guerrero Campos (collectively "the Campos family").

Don Roberts Enterprises/Trucking ("Don Roberts") employed Hightower and owned the truck tractor. Flexi–Van Leasing, Inc. ("Flexi–Van") owned the trailer towed by the tractor. Flexi–Van had leased the trailer to Norton Lilly Management Corp. ("Norton Lilly"), which subsequently subleased it in 1974 to Showa, a foreign steamship carrier, (collectively Flexi–Van, Norton Lilly and Showa are designated as the "trailer parties"). At the time of the accident, both the lease and the sublease had expired by their terms.[1] Even though the sublease had expired, Showa retained the trailer and continued to use it to carry cargo for its customers.

Prior to the accident, Hightower and Don Roberts picked up the trailer from a warehouse. The trailer was carrying a Showa container. Don Roberts was in turn subhauling for Federal Produce Transportation, Inc. ("Federal"), a highway common carrier.

National Union issued a liability policy on the trailer to Norton Lilly (the "Norton Lilly policy").[2] This policy provided coverage to users of the trailer with the express or implied permission of Norton Lilly. Flexi–Van was also insured by a policy issued by National Union. Showa obtained multi-peril marine insurance from Through Transport Mutual Insurance Corporation, Ltd.

("Through Transport"), which insured Showa with respect to the trailer. This policy covered product defects in the trailer and negligent entrustment, but did not cover liability for road accidents. The Showa policy named Norton Lilly as an additional insured.

In October 1985, the Campos family filed a lawsuit in the Superior Court for Santa Clara County (the "underlying action"). The lawsuit initially named Don Roberts, Federal and Hightower as defendants. Subsequently, the Campos family named Flexi–Van and "Showa, a Corporation" and served Flexi–Van. Showa was never served. Flexi–Van cross-complained against the named defendants as well as Norton Lilly. Norton Lilly in turn tendered its defense to Showa under the terms of its lease with Showa. Don Roberts cross-claimed against all the defendants. Federal cross-claimed against Don Roberts. Don Roberts filed a declaratory action against Flexi–Van, "Shawa" Corporation and other defendants in July, 1986 seeking a determination that the insurance policies of the other defendants also covered Don Roberts for its liability in the underlying action. Norton Lilly and National Union were added to the Don Roberts action. Showa also was not served in that action.

A settlement conference in the underlying action was convened in January, 1987. Showa's counsel did not "officially" attend the settlement conference, although he was outside in the hall. Showa and Through Transport advised Norton Lilly that they accepted its defense subject to the exclusions, rights and reservations of the Through Transport policy. However, Through Transport stated that it would not contribute any amounts on behalf of Showa nor Norton Lilly to the settlement of the underlying action. Norton Lilly turned down Through Transport's tender of defense.

---

1. The expired sublease between Norton Lilly and Showa required Showa to indemnify Norton Lilly for any liability arising out of the use of the trailer. On cross-motions for summary judgment, the district court ruled that the written contract could not impose any obligations on the parties because it had expired before the accident. Neither party is appealing this finding.

2. The policy stated, in pertinent part:

PART IV—LIABILITY INSURANCE

   \*      \*      \*      \*      \*      \*

D.  WHO IS INSURED

   \*      \*      \*      \*      \*      \*

2. Anyone else is insured while using with your permission a covered auto you own, hire or borrow ...

3. Anyone liable for the conduct of an insured described above is an insured but only to the extent of that liability....

Soon after the settlement conference, Don Roberts, Federal, Norton Lilly, Flexi–Van, and their insurers settled with the Campos family. Don Roberts' insurer, Colonial Penn, contributed its policy limit of $600,000. National Union contributed $500,000 from its policy naming Norton Lilly as an insured. Home Insurance Co. contributed $25,000 from its policy naming Federal as an insured. National Union also contributed $2,000 from its policy naming Flexi–Van as an insured.

## PROCEEDINGS BELOW

On May 24, 1988, National Union filed a declaratory judgment action in Superior Court for the State of California, City and County of San Francisco, seeking indemnity from Showa for the funds contributed by National Union to the settlement of the underlying litigation. Showa removed the case to the United States District Court for the Northern District of California on the basis of diversity of citizenship, 28 U.S.C. § 1332.[3]

Several pre-trial motions were filed in the instant case. In its first motion for summary judgment, Showa asserted that it was an unnamed, permissive insured under the National Union policy covering Norton Lilly, and thus National Union was barred from seeking subrogation from Showa. According to Showa, Showa was a permissive user under the policy because its use of the trailer was authorized by Norton Lilly. National Union argued that Showa was not a permissive user because it did not use the trailer in a manner approved by the named insured, Norton Lilly. On February 5, 1991, the district court accepted the principle that an insurer cannot be subrogated to a claim against an unnamed insured on any occurrence covered by the policy, but agreed with National Union that Showa had not met its

burden of proof in showing that it was a permissive user under the Norton Lilly policy. The lease between Showa and Norton Lilly required that any interchange of the trailer by Showa be made pursuant to a written interchange agreement.[4] Since Showa was unable to produce such a written interchange agreement, the district court denied Showa's motion.[5]

Subsequently in the course of the litigation, the parties filed cross-motions for summary judgment again arguing the issue of whether Showa was a permissive insured under the National Union policy issued to Norton Lilly. The district court reaffirmed its earlier holding: to qualify as a permissive insured, Showa would be required to produce a written interchange agreement with Don Roberts (the "July 27, 1992 Order"). According to the court, such an agreement was required by the lease and by ICC standards. The district court also concluded that Showa's liability could not be predicated on the terms of the expired written lease.

Following a bench trial, the district court issued a written order holding that National Union had met its burden of proof in establishing its right to equitable indemnity under California law. The court held that to meet its burden, National Union must prove that 1) its contribution to the settlement of the underlying litigation was reasonable in light of its potential liability to the Campos family, and 2) Showa also had exposure to the Campos family so that it would be equitable to impose the burden of contribution on Showa. The district court held that it need not determine whether Norton Lilly or Showa were actually at fault with respect to the Campos family accident; rather, potential liability was a sufficient basis for a claim of equitable indemnity by National Union. The district

**3.** National Union is a citizen of Pennsylvania and Showa is a citizen of Japan.

**4.** "Interchange Service" is a term of art that describes a regulated economic relationship among trucking entities. *See Simmons v. King,* 478 F.2d 857, 865 (5th Cir.1973). The Interstate Commerce Commission ("ICC") defines interchange service as use of equipment under an interchange agreement. 49 C.F.R. § 1057.5. An interchange agreement mandates that operators assume responsibility for the use of the equip-

ment. 49 C.F.R. §§ 1057.12, 1057.31. An interchange agreement must contain, *inter alia,* licensing and insurance provisions. 49 C.F.R. § 1057.2(c).

**5.** Showa claims that the interchange agreement was unavailable because it had been destroyed as part of the termination of Showa's West Coast operations in 1988. However, at trial the District Court found that the record contained no indication that such an agreement ever existed.

court concluded that National Union met this standard by showing that both it and Showa were potentially liable to the Campos family under the Campos family negligent entrustment theory. The district court found that the evidentiary record confirmed that Hightower "had a history of driving violations and was not fit to drive a tractor trailer." While neither Showa nor Norton Lilly were directly responsible for entrusting the trailer to Hightower, "both ... committt[ed] arguably negligent acts which allowed Hightower to take possession of the trailer...."[6] Since both Showa and Norton Lilly were potentially liable in the underlying action, National Union's participation in the settlement was reasonable. The district court concluded that Showa, as a potential joint tortfeasor, was required to share equally in the cost of settling the underlying action.

In an Order filed April 9, 1993, the district court found that National Union was entitled to pre-judgment interest under California Civil Code § 3287(a), reasoning that the damages were capable of being made certain as of the date National Union settled the underlying action.

Showa has challenged the district court's interpretation of several points of California law. We will address each issue raised on appeal in turn.

## DISCUSSION

### I. *Showa as an Unnamed Insured Under National Union's Norton Lilly Policy*

#### A. Standard of Review

■ The district court apparently disposed of Showa's permissive use claim on summary judgment. A grant of summary judgment is reviewed de novo. *Jones v. Union Pacific R.R.*, 968 F.2d 937, 940 (9th Cir.1992).

#### B. Analysis

In ruling on the parties' cross motions for summary judgment, the district court held that Showa was not a permissive user under the policy because it did not produce a written interchange agreement between itself and Don Roberts. The district court found that even though the written contract which required an interchange agreement had expired, Showa could be a permissive user only if it allowed use of the trailer pursuant to a written interchange agreement. The district court's rationale for this holding is somewhat confusing. The court specifically declined to address whether an implied contract extending some of the lease terms of the written contract—including the requirement of a written interchange agreement—was in force at the time of the accident. Furthermore, the district court apparently relied on the written contract for the interchange agreement requirement, though it specifically found the written contract was inapplicable. Finally, as indicated in the court's subsequent findings of fact and conclusions of law, the district court seemed to conclude that Showa needed an interchange agreement to establish permissive use because ICC standards require written interchange agreements.

Neither party disputes that if Showa is an unnamed insured under the Norton Lilly policy, National Union's claims against Showa would be precluded. *See generally United States Steel Corp. v. Transport Indem. Co.*, 241 Cal.App.2d 461, 50 Cal.Rptr. 576 (1966) (an insurer cannot be subrogated to a claim against its insured). However, the parties vigorously contest whether Showa is an unnamed insured under Norton Lilly's National

---

**6.** The court found Showa potentially negligent because it allowed Don Roberts to obtain possession of the trailer without an interchange agreement. The district court found that custom in the shipping industry did not permit a tractor driver to take a trailer without an interchange agreement, and that Showa's departure from this industry practice indicated negligence. The court also held that Showa presented no evidence that it actually exercised due care in entrusting the trailer to Don Roberts and Hightower. While Showa testified as to the company's normal practice at the shipyard where Showa's trailers were stored, there was no evidence as to how Hightower actually took possession of the trailer involved in the Campos family accident. Accordingly, the district court held that a reasonable factfinder might conclude that Showa was negligent in permitting Hightower to take possession of the trailer.

The district court also found that Norton Lilly was arguably negligent when it permitted Showa to retain possession of the trailer without restrictions after the lease had expired.

Union policy. Showa advances two theories under which it qualifies as an unnamed insured: 1) it is a permissive user of the trailer under the policy; and 2) it is an insured under the policy language that defines an insured as anyone legally responsible for the conduct of an insured.

### 1. Permissive Use

■ Showa is not a permissive user under the Norton Lilly policy, albeit for reasons different from those advanced by the district court. In the instant case, there was no written contract in effect at the time of the accident. In addition, the district court made no finding as to whether or not there was an implied contract in effect. Nonetheless, the district court held that Showa was required, as a matter of law, to produce a written interchange agreement to show permissive use. Absent a finding that there was an implied contract, however, there is no authority for the proposition that permissive use means use according to the expired terms of a prior written contract. Indeed, California law defines use, when unrestricted by the policy itself, broadly. *St. Paul Fire & Marine Ins. Co. v. Hartford Acc. & Indem. Co.,* 244 Cal.App.2d 826, 831, 53 Cal.Rptr. 650, 654 (1966) (citations omitted); *Columbia Southern Chemical Corp. v. Manufacturers & Wholesalers Indem. Exch.,* 190 Cal.App.2d 194, 202, 11 Cal.Rptr. 762, 767 (1961). The court's finding as to ICC custom may have been an unstated finding that an implied contract existed between the parties. However, absent an explicit finding as to the existence of an implied contract, the plain language of the insurance contract controls and thus the court erred in granting summary judgment to National Union on this basis. *Truck Ins. Exchange v. Pozzuoli,* 17 Cal.App.4th 856, 859, 21 Cal.Rptr.2d 650, 651 (1993).

■ Nonetheless, we affirm the district court's holding that *Showa* is not a permissive user under the policy, as a matter of law, on an alternate basis. National Union argues that California law, specifically the California Insurance Code, compels the conclusion that Showa was not a permissive user under the Norton Lilly policy. California Insurance Code § 11580.06 defines "use" for purposes of permissive user clauses in automobile liability policies as follows:

> (G) The term "use" when applied to a motor vehicle shall only mean operating, maintaining, loading, or unloading a motor vehicle.

> (F) The term "operated by" or "when operating" shall be conclusively presumed to describe the conduct of the person sitting immediately behind the steering controls of the motor vehicle. The person shall be conclusively presumed to be the sole operator of the motor vehicle.

*See also City of San Buenaventura v. Allianz Ins. Co.,* 9 Cal.App.4th 402, 405, 11 Cal.Rptr.2d 742, 744 (1992); *Ohio Farmers Ins. Co. v. Quin,* 198 Cal.App.3d 1338, 1349, 244 Cal.Rptr. 359, 366 (1988).[7]

Showa cannot be a permissive user because Showa is not a user as defined by the statute. It is undisputed that Showa did not operate, maintain, load or unload the trailer but merely entrusted it to Don Roberts and Hightower. Entrustment does not constitute use under California Insurance law. Accordingly, Showa does not fall under the permissive user clause of the Norton Lilly policy.

### 2. Anyone Legally Responsible for the Conduct of an Insured

■ Nonetheless, Showa may be covered under the Norton Lilly policy under the alternate definition of "insured." The policy expressly covers "anyone liable for the conduct of an insured." Showa argues that Roberts and Hightower were permissive insureds under the policy and, since Showa entrusted the trailer to Roberts and Hightower, Showa is insured as someone legally responsible for the conduct of an insured.

Although there is a paucity of case law to aid the court in interpreting this provision, a grant of summary judgment on this theory of

---

7. Section 11580.06 was not enacted until 1984, the year of the accident. However, any potential retroactivity problems are eviscerated by the holding in *Ohio Farmers,* which stated that § 11580.06 was merely a codification of existing law on the definition of use in an insurance policy. *Id.,* 198 Cal.App.3d at 1349, 244 Cal. Rptr. at 366.

coverage is clearly inappropriate. In *Ohio Farmers*, the California Court of Appeals found that a third party who used a car entrusted to her by the car owner's son without the owner's knowledge was a permissive user. In that case, a bicyclist was struck by an automobile driven by Sylvia Chiaravallo. The car was owned by Kathleen Sullivan, who was insured by Ohio Farmers. Sullivan's son, Murray Martin, had entrusted the car to Chiaravallo. Sullivan did not know Chiaravallo, but Martin had unlimited authority from Sullivan to drive the automobile and to allow others to do so. Sullivan's policy contained an endorsement excluding coverage while Martin was using the car.

The court held that the entrustment of the car by Martin to Chiaravallo was not use, and hence the endorsement did not apply. *Ohio Farmers*, 198 Cal.App.3d at 1343, 244 Cal.Rptr. at 362. However, the court also found that Chiaravallo was a permissive user under the policy and Ohio Farmers was responsible for coverage for the accident. Although the court did not specifically explicate its reasoning on this point, Chiaravallo appears to be a permissive user because she had permission to use the car from someone who, in turn, had the owner's permission to use and to entrust the car. *See also Fremont Compensation Ins. Co. v. Hartnett*, 19 Cal.App.4th 669, 675, 23 Cal.Rptr.2d 567 (1993) (appellate court upheld a finding of implied permission when owner took no positive steps to deny access to user).

The instant case falls squarely within this fact pattern. Once the lease expired, Norton Lilly did not impose any restrictions on Showa's use nor entrustment of the trailer. This was a specific factual finding by the district court. In addition, the court specifically declined to address whether the expired written lease imposed some restrictions on Showa's entrustment of the chassis. As a result, although Norton Lilly did not know that Showa was entrusting the trailer to Don Roberts, Don Roberts was a permissive user because Showa had unrestricted control over the trailer. In short, Don Roberts was entrusted the trailer by someone who had implicit, and apparently unlimited, authority to

use and to entrust the trailer. Taking the evidence in the light most favorable to the non-moving party, Don Roberts and Hightower were permissive users under California law and, hence, were unnamed insureds under the Norton Lilly policy. Accordingly, if Showa is found liable under a negligent entrustment theory, Showa is a party liable for the conduct of an insured, and hence also an insured under the Norton Lilly policy.

We reverse the district court's grant of summary judgment on the issue of Showa's coverage under the Norton Lilly policy. We remand this issue to the district court to determine whether the expired lease imposed restrictions on Showa's use of the trailer.

## II. *Equitable Indemnity*

### A. Standard of Review

█ State law questions are reviewed de novo. *Salve Regina College v. Russell*, 499 U.S. 225, 231–34, 111 S.Ct. 1217, 1221–22, 113 L.Ed.2d 190 (1991).

### B. Analysis

█ The district court held that to establish a right to equitable indemnity under California law, National Union had to show 1) that its contribution to the settlement was reasonable in light of its own potential liability to the Campos family, and 2) that Showa also had exposure to the Campos family so that it was equitable to have Showa contribute to the settlement. The district court cited *Mullin Lumber v. Chandler*, 185 Cal. App.3d 1127, 1131–34, 230 Cal.Rptr. 122, 124–26 (1986), and *Tatum v. Armor Elevator Co.*, 203 Cal.App.3d 1315, 1320, 250 Cal.Rptr. 775, 779 (1988), to support this proposition. The court held that a finding of actual negligence on Showa's part was not necessary to support an equitable indemnity claim. Showa contests this conclusion.

No California case has directly ruled on the issue of whether a party seeking contribution under a theory of equitable indemnity must prove the actual fault of the party from whom he seeks contribution. The *Mullin Lumber* and *Tatum* courts merely held that in the interest of promoting settlement, a settling defendant need not prove its own

fault before seeking indemnity against others whom it alleges contributed to the plaintiff's injury. *Mullin Lumber*, 185 Cal.App.3d at 1132, 230 Cal.Rptr. at 124; *Tatum*, 203 Cal. App.3d at 1321, 250 Cal.Rptr. at 779. Thus, these cases do not resolve the issue of the necessity of proving the potential indemnitor's actual negligence.

Based on the available California equitable indemnity case law, we conclude that National Union must prove more than mere potential liability in order to obtain contribution from Showa for the settlement it reached in the underlying action.

■ California courts adopted the equitable indemnity rule to ensure that "liability for an indivisible injury caused by concurrent tortfeasors [would] be borne by each individual tortfeasor 'in direct proportion to [his] respective fault....'" *GMC v. Doupnik*, 1 F.3d 862, 865–66 (9th Cir.1993) (citing *American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 598, 146 Cal.Rptr. 182, 195, 578 P.2d 899 (1978)); *see also Tatum*, 203 Cal. App.3d at 1319–20, 250 Cal.Rptr. at 778 (equitable indemnity is intended to prevent unjust enrichment of one party at the expense of another). However, California law permits a concurrent tortfeasor to obtain equitable indemnity only from another concurrent tortfeasor. *GMC*, 1 F.3d at 866 (citing *Munoz v. Davis*, 141 Cal.App.3d 420, 524, 190 Cal.Rptr. 400, 403 (1983) ("There can be no indemnity without liability[;] ... [u]nless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff there is no basis for indemnity.")); *see also GEM Developers v. Hallcraft Homes of San Diego, Inc.*, 213 Cal.App.3d 419, 430, 261 Cal.Rptr. 626, 632 (1989). In order to obtain contribution, "[t]he settling defendant would still have to prove fault on the part of the nonsettling defendant contributed to the plaintiff's injuries.... [T]he obligation to indemnify is triggered by proof the party from whom indemnity is sought was itself at fault in causing the injury." *Mullin Lumber*, 185 Cal.App.3d at 1134, 230 Cal.Rptr. at 126 (citing *American Motorcycle*, 20 Cal.3d at

607, 146 Cal.Rptr. 182, 578 P.2d 899). These cases indicate that to obtain indemnity from an alleged joint tortfeasor, the settling defendant must show that the nonsettling defendant is at fault. Fault must mean more than potential liability; if the nonsettling party were only potentially liable, there would be no unjust enrichment. Absent unjust enrichment, there is no need for equitable indemnity.

*Mullin Lumber* and *Tatum* emphasize that settlements should be encouraged and that each party should be allowed to make a reasonable assessment of his potential liability when deciding to settle the case. *See Mullin Lumber*, 185 Cal.App.3d at 1134, 230 Cal.Rptr. at 125–26. If a party chooses to settle, he should not be penalized by being precluded from seeking indemnity from other parties who are also liable. However, by the same token, other potentially liable parties should not be penalized by one party's decision to settle its own claims. Each nonsettling party is entitled to make an assessment of its potential liability and possibility of success at trial; it should not be forced to pay a settlement to which it did not agree in the absence of a showing of actual fault and liability on its part.

In the instant case, the district court found only that the Campos family had an arguable theory of liability against Showa. National Union chose to settle with the Campos family due to its belief that it was exposed to liability in the underlying action. National Union had no authority to decide for Showa the extent, if any, of Showa's exposure in the lawsuit. Absent a showing of the actual liability of Showa, Showa is not unjustly enriched at National Union's expense. Accordingly, the district court erred in finding that potential liability was a sufficient basis for an equitable indemnity claim.

On appeal, both parties spend a great deal of time arguing the issue of whether Showa was negligent.[8] While the district court found that there was a custom that prevented trailers from being interchanged without a written agreement and such a custom was

---

8. National Union argues that the district court was correct in finding that the Campos family articulated a potential theory of negligent entrustment against Showa. Showa argues that it was not actually negligent in entrusting the trailer to Don Roberts and Hightower.

evidence of negligence, custom is not dispositive of the issue of negligence. Accordingly, we remand the issue of Showa's negligence as it turns on factual issues more properly decided by a trier of fact.

### III. *Apportionment of Settlement Damages*

■ The district court held that "[C]alifornia law requires Showa as a potential joint tortfeasor to share equally in the cost of settling the Campos family litigation." The district court cited *California Food Services Corp. v. Great American Insurance Co.*, 130 Cal.App.3d 892, 901, 182 Cal.Rptr. 67, 73 (1982), to support this proposition. California law requires no such holding. The equitable indemnity rule enables a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis. *GMC*, 1 F.3d at 866 (citing *American Motorcycle*, 20 Cal.3d at 599, 146 Cal.Rptr. at 195, 578 P.2d at 912). The decision relied upon by the district court, *California Food Services*, only equally apportioned the damages at issue because a contract between the parties in that case required each party to bear responsibility for one-half of any loss under the policy. *California Food Services*, 130 Cal.App.3d at 901, 182 Cal.Rptr. at 73. Accordingly, should Showa eventually be required to indemnify National Union for a portion of the settlement, the district court must specifically determine each parties' respective fault in order to apportion the damages.

### IV. *Award of Prejudgment Interest*

■ The district court held that National Union was entitled to an award of pre-judgment interest on Showa's $250,000 contribution from the date of settlement because from that date, the damages were capable of being made certain. The court held that damages were capable of being made certain because the only issue at trial was liability. The court reasoned that although there "may have been some uncertainty about the extent of Showa's potential liability due to the various legal theories presented, that uncertainty does not preclude the award of prejudgment interest ... [because] ... the extent of [Showa's] exposure remained purely a question of

law." The district court cited California Civil Code § 3287(a), and *Fireman's Fund Ins. v. Allstate Ins. Co.*, 234 Cal.App.3d 1154, 286 Cal.Rptr. 146 (1991) to support this conclusion.

■ California Civil Code § 3287 reads: "(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, ..." Damages are certain or capable of being made certain where there is essentially no dispute between the parties concerning the basis of computation of damages, if any, are recoverable but where their dispute centers on the issue of liability giving rise to the damages. *Fireman's Fund*, 234 Cal.App.3d at 1173, 286 Cal.Rptr. at 157; *see also Harsany v. Cessna Aircraft Co.*, 148 Cal.App.3d 1139, 1143–45, 196 Cal.Rptr. 374, 377–78 (1983).

In the instant case, Showa not only disputed whether it was liable, but also, if liable, its liability in proportion to that of the other settling defendants. While the amount National Union contributed to the settlement of the underlying action was capable of being made certain as of the date of the settlement, Showa's share of that settlement was uncertain. Accordingly, the district court erred in awarding prejudgment interest to National Union.

### CONCLUSION

The district court erred in granting National Union summary judgment on Showa's claim of coverage under the Norton Lilly policy. Showa is an unnamed insured under the Norton Lilly policy as an individual liable for the conduct of an insured, Don Roberts and Hightower. Roberts and Hightower were insured under the Norton Lilly policy because they were permissive users. The district court also applied an incorrect standard in determining National Union's equitable indemnity claim against Showa. National Union is required to prove more than mere potentially liable in order to succeed on its equitable indemnity claim. In addition, the district court erred in its apportionment of damages. The district court erroneously as-

sumed that California law required the parties to split the cost of settlement equally. Instead, the district court was required to determine the relative fault of the parties to determine each party's respective contribution to the settlement. Finally, an award of prejudgment interest in this case was inappropriate as the damages were not capable of being made certain before a trial and a determination of the relative fault of the parties. REVERSED and REMANDED.