[No. A088304. First Dist., Div. Three. Apr. 12, 2002.]

RANCHO SOLANO MASTER ASSOCIATION, Plaintiff, v. AMOS & ANDREWS, INC., Defendant and Appellant; EMERALD HOMES et al., Defendants and Respondents.

[No. A088514. First Dist., Div. Three. Apr. 12, 2002.]

RANCHO SOLANO MASTER ASSOCIATION, Plaintiff, v. AMOS & ANDREWS, INC., Defendant and Respondent; EMERALD HOMES et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part B.

## COUNSEL

Burnham Brown and Scott Campbell Finch for Defendant and Appellant and for Defendant and Respondent Emerald Homes.

Tarkington, O'Connor & O'Neill, Chris A. Tarkington, Norman L. Chong; Lynch, Gilardi & Grummer and Ralph R. Rhoades for Defendant and Appellant and for Defendant and Respondent the Marker Group.

McNamara, Dodge, Ney, Beatty, Slattery & Pfalzer, James E. Allen; Willoughby, Stuart & Bening, Alexander F. Stuart and Andrew R. Shalauta for Defendant and Appellant and for Defendant and Respondent Amos & Andrews, Inc.

## OPINION

**CORRIGAN, J.**—Amos & Andrews, Inc., a general construction company, was sued by the Rancho Solano Masters Association (RSMA) for improper

remediation of landslides at the Rancho Solano housing development. In this consolidated appeal, Amos & Andrews appeals the jury's findings of liability and allocation of fault with regard to two of 13 landslides for which Amos & Andrews was found liable. The landslides occurred in subdivision units owned by homebuilders Emerald Homes (Emerald) and the Marker Group. Emerald and the Marker Group, who were found strictly liable for defective property conditions, cross-appeal. Both the Marker Group and Emerald claim the court erred in denying their claims of express indemnity against Amos & Andrews and by limiting their attorney fees. Additionally, Emerald claims the court erroneously denied it expert witness fees.

We dismiss the appeal of Amos & Andrews, concluding that Amos & Andrews waived its right to appeal liability as a result of its full satisfaction of judgment with RSMA. As to appeals of the Marker Group and Emerald, the court abused its discretion in its allocation of attorney fees. We reverse and remand the matter for a redetermination of those fees. The judgment is otherwise affirmed.

### Statement of Facts and Procedural History

The Rancho Solano Development involved the design, planning and manufacture of approximately 1,000 residential lots spread over 2,400 acres of graded slopes surrounding an 18-hole public golf course in Solano County. In January 1993 a series of landslides occurred giving rise to this lawsuit brought by RSMA, a nonprofit corporation that holds title to all common space areas within the development. RSMA sought damages to repair certain preexisting landslides and to stabilize others. RSMA sued Smith Ranch Company, the property owner; Amos & Andrews; Kiewit Pacific Company (Kiewit), the mass grading subcontractor; Balbi & Chang Associates, the soils engineer; Jack Johnson Engineers, the civil engineer; and Emerald, the Marker Group, and the other unit homebuilders at Rancho Solano. Causes of action against Amos & Andrews, the Marker Group and Emerald included negligence and strict liability.

### Phase I Development

In January 1982, William Smith, Frank J. Andrews, Sr., and Irving Loube formed a general partnership named Smith Ranch Company to sell 2,284 acres of undeveloped real property in Solano County. William Smith originally owned the property. Andrews owned the general construction company Amos & Andrews. In May 1982, Smith Ranch Company entered into an option agreement to sell the property to Amos & Andrews, which would develop the property. In October 1985, however, Amos & Andrews terminated its option rights. A month later, an attorney for Smith Ranch Company

informed the City of Fairfield that Amos & Andrews would no longer act as project manager or developer. However, Smith Ranch partner Irving Loube testified that Amos & Andrews did not in fact withdraw from the project. In April 1987, Amos & Andrews entered into a "management agreement" with Smith Ranch Company to oversee all design, engineering, construction and installation of improvements in Rancho Solano.[1] Irving Loube testified that this document accurately described the role of Amos & Andrews until the middle of 1988. On July 25, 1988, Smith Ranch entered into a management agreement with Andrews Management Services Company, Inc., a business owned by Frank Andrews, Jr., who was described as "project manager" at Rancho Solano. The agreement provided that Andrews Management Services, Inc., would oversee the processing of applications for entitlements affecting Rancho Solano.

The development of Rancho Solano ultimately was divided into two general phases. Phase I, the early development, involved three subdivisions identified as units 1, 2 and 3. Amos & Andrews retained soils engineer Balbi & Chang Associates to evaluate the Rancho Solano property. Amos & Andrews hired Jack Johnson Engineers which prepared tentative and final maps and improvement plans ultimately approved by the City of Fairfield. Additionally, Amos & Andrews entered into a mass grading contract with Kiewit for all grading of phase I. Amos & Andrews incorporated the RSMA as a nonprofit corporation composed of all Rancho Solano homeowners.

*Phase II Development*

The development of phase II involved nine subdivisions, units 4 through 12, and the public golf course. Amos & Andrews was listed with the City of Fairfield as the project sponsor for phase II. It secured the tentative map and planned unit development permit allowing construction of 609 additional residential lots in the phase II units. Amos & Andrews again hired Balbi & Chang and Jack Johnson Engineers to perform work in phase II.

Amos & Andrews entered into construction contracts with Emerald for unit 9 and with the Marker Group for unit 12. This appeal involves these two units alone.

*Phase II Landslide Repair*

Balbi & Chang issued a geotechnical investigation report for phase II identifying 115 preexisting landslides and recommending methods for their

[1]An unsigned copy of the agreement was admitted into evidence at trial on the testimony of Irving Loube who thought he had seen a signed copy, but was unable to locate it. Gary Andrews, vice-president of Amos & Andrews and son of Frank J. Andrews, Sr., testified that the agreement was a mere proposal and never executed.

repair during site grading. Their report stated that all landslides affecting proposed developments "should be either totally removed or stabilized." As to certain landslides, Balbi & Chang recommended the removal and replacement of slide debris and the installation of subdrains. In areas of lesser risk, Balbi & Chang recommended a long-term maintenance program of periodic monitoring.

Balbi & Chang's report included a detailed discussion of the slides grouped into major units and areas, and recommended repairs for each slide, recommending complete removal and replacement of slide debris for landslides 9G and 12G, located in units 9 and 12 respectively.

Balbi & Chang monitored construction for purposes of compliance with design specifications and any necessary changes. The firm submitted a final report stating that all site grading, including landslide mitigation and subdrain installation, had been performed in "substantial conformance to the project plans and specifications of the project geotechnical report." Its report stated that Balbi & Chang's conclusions were based on the "observation of our field representatives" subject to the following disclaimer: "Our personnel have employed accepted engineering and testing procedures performing construction observation and field testing. We do not undertake the guarantee of construction nor do we release the contractor of his primary responsibility to produce a completed project conforming to the project plans and specifications."

Geotechnical engineer Lyle Lewis testified on RSMA's behalf that, despite Balbi & Chang's recommendations, many preexisting landslides at Rancho Solano, including 9G and 12G, were not properly remediated. Additionally, Balbi & Chang's recommendations for landslide 9G included the installation of subdrains, for which Amos & Andrews was responsible. Gary Andrews testified that Amos & Andrews attempted to verify the location of all subdrains at Rancho Solano. As to landslide 9G, Andrews initially testified there was a subdrain located at "the toe of [the] slope," but later stated that Amos & Andrews could not find a subdrain at that landslide.

*Jury Verdict*

Six special verdict forms were submitted to the jury, including one for units 9 and 11 and one for unit 12. The jury was instructed that Smith Ranch Company, Amos & Andrews, the Marker Group, Emerald and the other unit homebuilders "were engaged in the mass production and/or sale of all or portions of Rancho Solano," making them entities on whom strict liability could be imposed. The only question for the jury regarding the strict liability

claims was whether a defect existed in the design or construction of a particular area at the time RSMA received title, and whether the defect caused damage. The jury was asked to make this determination as to each of the landslides in question. The jury found defects in 13 areas, including landslides 9G and 12G.

With regard to negligence, the special verdict forms did not delineate the specific landslides. Instead it asked generally whether parties were negligent with respect to the particular unit at issue. For example, the jury was asked: "Were any of the defendants negligent with respect to Units 9 or 11?" The listed defendants were Smith Ranch Company, Emerald, Amos & Andrews, Kiewit, Jack Johnson Engineers and Balbi & Chang. The question was identical with respect to unit 12, except that the Marker Group was the listed builder. As to all units, including units 9 and 12, the jury found only Smith Ranch and Amos & Andrews negligent.

The total amount of damages awarded by the jury for phase II was $5,876,000. The court later entered judgment in favor of RSMA for $5,416,100.[2] The jury awarded $1 million in damages for landslide 9G and $2, 250,000 in damages for landslide 12G. Finally, as to all units, including units 9 and 12, the jury was asked the following question on the special verdict form: "Assuming that 100% represents the total causes of the plaintiff's damage in [the Unit at issue], what percentage of this 100% is attributable to the comparative fault of the plaintiff and what percentage of this 100% is attributable to the negligence, fault and wrongful conduct of the defendants?" As to all units, the jury allocated Amos & Andrews 60 percent of fault and Smith Ranch Company 40 percent of fault. Emerald and the Marker Group, like the other unit builders, were allocated zero fault.

Following the special verdicts, the court entertained a variety of motions, including motions for new trial, motions for judgment notwithstanding the verdict, and motions for attorney fees brought by various unit builders against Amos & Andrews. The court ultimately entered judgment against the unit builders. However, in light of the jury's allocation of zero fault, the court awarded the unit builders complete indemnity against Smith Ranch and Amos & Andrews. The trial court subsequently entered an amended judgment awarding attorney fees and costs to the unit builders on the basis of implied indemnity under Code of Civil Procedure Section 1021.6 rather than under express contractual indemnity as sought by the builders.

---

[2]Balbi & Chang settled with RSMA while the jury was deliberating. The court reduced the jury's verdict by a portion of that settlement.

*Discussion*

## A.  *Amos & Andrews's Appeal*

**(1)**   In its opening brief, Amos & Andrews advises that it "has settled virtually every dispute but those involving [Emerald] and [The Marker Group.]" and that it satisfied the judgment in favor of plaintiff. It also accepts the judgment in favor of the Marker Group for all damages in unit 12 except those attributable to landslide 12G. Amos & Andrews states: "This appeal seeks only to reverse the judgment in respect to landslides 9G and 12G, for which [Emerald] and [the Marker Group] should be obligated to indemnify Amos & Andrews." As to these two landslides, Amos & Andrews disputes the jury's findings on liability and the concomitant effect on allocation of fault. Amos & Andrews does not contest damages. Amos & Andrews asserts its intention to present a "streamlined appeal" by focusing solely on landslides 9G and 12G. It states that these landslides were the basis of the largest damages awards and "unlike other landslides for which damages were awarded, documentary evidence was presented at trial regarding their remediation, including job diaries, invoices and 'extra work sheets.' "

The Marker Group argues that by satisfying the judgment in favor of plaintiff, Amos & Andrews has waived its right to appeal liability. We agree. We summarize Amos & Andrews's asserted claim of errors in order to address the appealability of the judgment.

### 1.  *Claims of Trial Court Error Regarding Strict Liability and Negligence*

Amos & Andrews argues the court erred in certain rulings regarding RSMA's strict liability and negligence claims. Amos & Andrews contends that if the court had ruled correctly, it could not have been found liable on either claim. As to strict liability, Amos & Andrews asserts that by granting RSMA's motion for summary adjudication the court deprived Amos & Andrews of a jury trial on factual questions necessary for imposition of strict liability. Specifically, Amos & Andrews argues a jury should have decided whether Amos & Andrews was a manufacturer when it participated in the mass grading of Rancho Solano and whether its work involved building a product rather than improving a raw material.

Second, Amos & Andrews argues the court erred in denying its motion for a directed verdict on the negligence claim. RSMA's theory of negligence was that Amos & Andrews failed to remediate the landslides before conveying parcels containing unstable hillsides to unit builders for the construction

of homes. Amos & Andrews argues that it relied on representations by Balbi & Chang, which monitored construction activities and reported that Amos & Andrews had performed in "substantial conformance to the project plans and specifications and the project geotechnical investigation report." Amos & Andrews contends the issue for the jury was whether Amos & Andrews could reasonably have relied on those representations. It argues that RSMA was required to present expert testimony "on the standard of care of construction managers responsible for coordinating landslide remediation." Amos & Andrews claims that, in the absence of this testimony, the jury was allowed to speculate as to the reasonable practices of a construction manager in these circumstances.

## 2. *Appealability*

Following issuance of the judgment on the special verdict on July 1, 1999, and the amended judgment on August 6, 1999, Amos & Andrews filed a notice of appeal from the entire judgment. Before filing its opening brief, however, Amos & Andrews and Smith Ranch Company settled with RSMA, agreeing to pay $5.15 million, including RSMA's attorney fees and costs. RSMA filed a satisfaction of judgment on September 21, 1999.

"A party who voluntarily complies with the terms of a judgment, or who satisfies it by voluntary payment or otherwise, impliedly waives the right to appeal from it." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 209, p. 264; *A.L.L. Roofing & Bldg. Materials Corp. v. Community Bank* (1986) 182 Cal.App.3d 356, 359 [227 Cal.Rptr. 308]; *Hellman Commercial T. & S. Bk. v. Alden* (1929) 206 Cal. 592, 599 [275 P. 794].) "[A]n appeal is dismissed if the judgment is satisfied . . . because the satisfaction moots the issues on appeal. [Citation.]" (*A.L.L. Roofing & Bldg. Materials Corp. v. Community Bank, supra,* at p. 359.) The satisfaction of judgment "is decisive of the rights of the parties and bars reopening the issues settled. Absent a fundamental defect the terms are binding on the parties." (*Ibid.*)

By settling with RSMA and voluntarily paying the judgment, Amos & Andrews affirmed the validity of judgment against it. The settlement terminated all issues relating to the litigation between RSMA and Amos & Andrews, including RSMA's claim of liability against Amos & Andrews. Amos & Andrews now seeks a remedy to which it is not entitled. Having been found liable at trial and having satisfied the judgment, Amos & Andrews seeks a retrial in which its codefendants, rather than RSMA, will have the burden to prove Amos & Andrews's liability anew.

Amos & Andrews reasons that it is entitled to relitigate liability in the context of a claim for equitable indemnity arising from the satisfaction of

judgment. It points out that the Marker Group and Emerald were obligated as joint tortfeasors to pay RSMA's damages. Amos & Andrews claims that by settling with RSMA on behalf of all defendants, it extinguished the home-builders' payment obligation. At oral argument, Amos & Andrews asserted its situation is no different than if it had settled with RSMA before trial and pursued a claim of equitable indemnity against the Marker Group and Emerald. It posits that in such a situation, the Marker Group and Emerald would be required to prove Amos & Andrews's liability in order to reduce their own indemnity obligation.

Amos & Andrews relies on *Tatum v. Armor Elevator Co.* (1988) 203 Cal.App.3d 1315 [250 Cal.Rptr. 775] (*Tatum*), to argue that it is entitled to indemnification as a settling defendant. The *Tatum* plaintiff brought her action against defendants Gerson Bakar and Associates (Bakar), Center Street Associates (Center) and Armor Elevator Company, Inc. (Armor). Bakar and Center settled with the plaintiff and the case proceeded to trial on the plaintiff's negligence action against nonsettling Armor and on Bakar and Armor's cross-actions against each other for equitable indemnity. (*Id.* at p. 1317.) The jury returned special verdicts indicating that neither defendant was negligent. The judgment also declared that both defendants would take nothing on their cross-complaints. (*Id.* at pp. 1317-1318.) Bakar appealed the portion of the judgment denying indemnification. It argued that Armor would have been found liable under instructions Bakar had proposed, thereby enabling Bakar to recover some or all of its settlement payment. Armor responded that Bakar lacked standing to appeal because the judgment was favorable to Bakar in all respects. (*Id.* at p. 1318.) The Court of Appeal rejected this argument, holding that a settling defendant does not have to demonstrate its liability before pursuing an indemnification claim against a nonsettling defendant. *(Id.* at p. 1320.) The court reasoned: "A settling defendant's right to appeal cannot be predicated upon a finding of fault because . . . fault is not an essential element of the underlying claim." (*Id.* at p. 1321.) The court reiterated the principle of equitable indemnity: " 'The basis for indemnity is restitution, and the concept that one person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay. . . .' " (*Id.* at p. 1320, quoting Rest.2d Torts, § 886B, com. on subd. (1), pp. 345-346.) The court opined that the policy of equitable apportionment of responsibility would be defeated if Bakar could not seek indemnity. (*Tatum,* at p. 1320.)

For several reasons, *Tatum* is not analogous to the facts here. In *Tatum*, Bakar's right of equitable indemnity arose from its pretrial settlement with the plaintiff. At the time Bakar settled with the plaintiff there had been no

determination of liability and no ruling on indemnity. Here, Amos & Andrews claims an equitable indemnity right based on its postjudgment settlement. It argues that its satisfaction of the judgment unjustly enriched the Marker Group and Emerald, which were jointly liable. However, Amos & Andrews ignores the judgment that preceded its settlement. By special verdicts, the jury found Amos & Andrews strictly liable and negligent. While the jury found the homebuilders strictly liable, it allocated them zero fault. As a result, the court rejected Amos & Andrews's cross-complaint against the homebuilders for equitable indemnity and awarded implied indemnity to the homebuilders instead. The amended judgment provides: "With the jury's allocation of 0% responsibility to any of the Phase 2 Unit Builders, and 60% responsibility to Amos & Andrews, the Unit Builders shall be entitled to 100% indemnity from Amos & Andrews for any amounts of this judgment collected against them, as set forth earlier in this judgment. Also, with the jury's allocation of 0% responsibility to the Unit Builders and 40% to Smith Ranch Company, these Unit Builders shall be entitled to 100% indemnity from Smith Ranch Company for any amounts of this judgment collected against them, as set forth earlier in this judgment." The satisfaction of the judgment did not resurrect an equitable indemnity claim already rejected by the court. Instead, by satisfying the judgment, Amos & Andrews and Smith Ranch Company assumed full responsibility for RSMA's damages, as the judgment required.

Additionally, in *Tatum*, only the nonsettling defendant's liability was at issue. The court in *United Pacific Ins. Co. v. Hanover Ins. Co.* (1990) 217 Cal.App.3d 925 [266 Cal.Rptr. 231] analyzed *Tatum* as follows: "[*Tatum*] merely holds that one blameless settling tortfeasor may attempt to show that another nonsettling tortfeasor was *not* blameless. [¶] . . . Had *Tatum's* appellant proved prejudicial instructional error on the standard of care, that appellant would have had another opportunity to find a culpable breach of that standard by the nonsettling defendant. Absent such culpability by the party from whom the settler seeks indemnity or contribution, no right to an equitable reapportionment exists." (*Id.* at p. 938, fn. omitted.) In *Tatum's* unpublished portion, the court rejected Bakar's instructional error claim. (*Tatum, supra*, 203 Cal.App.3d at p. 1321.) If the claim had proceeded, however, Bakar presumably would have had the burden of proving the codefendant's liability.

Unlike *Tatum*, the codefendants here were found liable.[3] It is Amos & Andrews's liability, not that of the Marker Group and Emerald, that is at

---

[3]The Marker Group and Emerald were found strictly liable. Amos & Andrews does not argue that the homebuilders should have been found negligent.

issue in this appeal. Amos & Andrews seeks a retrial of *its* liability and argues, remarkably, that Emerald and the Marker Group would carry the burden of proof in this new trial. Amos & Andrews turns the *Tatum* decision on its head. Amos & Andrews is not appealing denial of indemnification. Rather, under the guise of such a claim, it is seeking a second bite at the liability apple. Simply put, if Amos & Andrews contests its liability for RSMA's damages, it should have pursued an appeal against RSMA instead of satisfying the judgment. It does not have a right to a retrial in which yet another party will bear the burden of proving it liable.

Amos & Andrews argues that if we do not review liability, we are penalizing it for settling with RSMA. Amos & Andrews contends that "a new rule of appellate practice will be fashioned, one requiring that defendants seeking equitable indemnity must appeal *everything* while injured parties unconcerned with the apportionment of fault must wait even longer for their recoveries. It is inconceivable that the strong public policy favoring settlement of litigation could tolerate such inequitable waste." At oral argument, Amos & Andrews complained it would have been forced to "drag" RSMA through a retrial simply because of a dispute with the Marker Group and Emerald as to who is responsible for paying the judgment and in what proportion. Amos & Andrews's argument is disingenuous. This is not an appeal solely of the jury's allocation of fault among joint tortfeasors or of the court's determination that the homebuilders should be fully indemnified. Rather, as we have discussed, this is an appeal of the jury's finding of liability in the first instance.

Having failed to present any basis on which we can review the trial court's rulings on strict liability and negligence, Amos & Andrews's appeal is dismissed.

B.   *Cross-appeal of the Marker Group and Emerald\**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

*Disposition*

Amos & Andrews's appeal is dismissed. The award of attorney fees to Emerald is reversed and remanded to the trial court for determination in accordance with the views expressed in this opinion. As to the Marker Group, the amended judgment regarding the award of attorney fees should be corrected to reflect a phase I award of $133,700 and a phase II award of

---

\*See footnote, *ante*, page 681.

$160,440. In all other respects, the judgment is affirmed. Parties are to bear their own costs on appeal.

McGuiness, P. J., and Parrilli, J., concurred.